UNITED STATES of America

v.

**Marc A. MADISON, Defendant.**

**No. 91 Cr. 161 (RPP).**

United States District Court, S.D. New York.

Jan. 2, 1992.

---

Otto G. Obermaier, U.S. Atty., S.D.N.Y. by Jonathan N. Halpern, Asst. U.S. Atty., New York City, for U.S.

Legal Aid Soc. Criminal Defense Div., Federal Defender Services Unit by Leonard F. Joy, New York City, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant moves for an order declaring the distinction in sentencing between cocaine and cocaine base in 21 U.S.C. § 841 and in the United States Sentencing Guidelines unconstitutional in violation of the Fifth Amendment to the United States Constitution. For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

On March 9, 1990, Defendant Marc Madison was arrested on board a bus at the Port Authority bus station and charged

with possession of a substance believed to be some form of cocaine. Madison was subsequently indicted for possession with intent to distribute "a Schedule II controlled substance, to wit, 50 grams and more of a mixture and substance containing a detectable amount of cocaine base in a form commonly known as 'crack'."

On September 20, 1991, Madison pled guilty to the one count indictment, admitting he had possessed a controlled substance, namely cocaine, with intent to distribute. Sentencing by this Court is now pending, and the issue to be determined is whether Madison should be sentenced for possession of cocaine or cocaine base.

The Anti–Drug Abuse Act of 1986, P.L. 99–570, 100 Stat. 3207, ("the Act") amended the penalty section of 21 U.S.C. § 841 to provide new mandatory penalties. As a result, possession with intent to distribute a relatively small amount of a mixture or substance containing "cocaine base" carries the same penalty as possession with intent to distribute a mixture or substance containing other forms of cocaine, including cocaine hydrochloride.[1] For example, § 841(b)(1)(A) mandates a minimum sentence of 10 years for possession with intent to distribute 50·grams or more of a mixture or substance which contains cocaine base. However, to be subject to the mandatory 10 year penalty, one need possess 100 times that amount of a mixture or substance containing other forms of cocaine. The United States Sentencing Guidelines (the "Guidelines") incorporate this statutory distinction by providing a penalty for a given amount of a mixture or substance containing cocaine which is identical to that imposed for $\frac{1}{100}$ the amount of a mixture or substance containing cocaine base. United States Sentencing Commission, *Guidelines Manual*, § 2D1.1 (Nov.1991). Neither the Act, nor 21 U.S.C. § 841, nor the Guidelines provides a definition of "cocaine base." The commentary to the Guidelines, how-

ever, equates cocaine base with "crack." U.S.S.G. § 2D2.1, comment.

Madison argues that he should be sentenced for possession with intent to distribute cocaine and not cocaine base on the grounds that: (1) the absence of a definition of "cocaine base" renders the cocaine base penalty provision too vague to be enforceable; (2) the distinction between cocaine and cocaine base made in the statute and in the Guidelines is not based on any rational criterion; and (3) enforcement of the cocaine base penalty deprives the defendant of equal protection of the law.

On October 24, 1991, the Court conducted an evidentiary hearing in connection with this matter. Testimony was heard from Roger Godino, a forensic chemist at the Drug Enforcement Agency, and Detective Sergeant Richard Canale of the Port Authority Police.

## DISCUSSION

### I. VAGUENESS

 The "void-for-vagueness" doctrine requires that for a penal statute to meet the Fifth Amendment's due process requirements, the statute must: (1) "define the criminal offense with sufficient definitiveness that ordinary people can understand what conduct is prohibited," and (2) "establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357–8, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). In a vagueness challenge which does not involve the First Amendment, the defendant must show that the law is impermissibly vague with respect to the facts of his own case. *U.S. v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).

### A. *Definition of "cocaine base"*

 Several Circuits have considered the vagueness challenge to the cocaine base penalty provision. Despite the varied definitions of "cocaine base" which the Circuits have adopted,[2] the Circuits do agree that

---

1. "Cocaine hydrochloride" is the proper name for what is commonly referred to as "cocaine." Transcript of Hearing of October 24, 1991 ("Tr.") at 10–11.

2. In *U.S. v. Brown*, 859 F.2d 974, 975–6 (D.C.Cir. 1988), the D.C. Circuit defined cocaine base in chemical terms as any form of cocaine with the hydroxyl radical (OH–). This definition ex-

whatever Congress intended by the term "cocaine base," it intended to include what is commonly known as "crack." *See, e.g., U.S. v. Collado–Gomez*, 834 F.2d 280 (2d Cir.1987); *U.S. v. Avant*, 907 F.2d 623 (6th Cir.1990); *U.S. v. Williams*, 876 F.2d 1521 (11th Cir.1989); *Shaw, supra; Van Hawkins, supra; Barnes, supra; Brown, supra.*

The legislative history of the Act supports the conclusion that Congress used cocaine base as a synonym for crack. The Senate version of the bill which was ultimately enacted used the term "cocaine base," S. 2878, 99th Cong., 2d Sess. § 1002, 132 Cong.Rec. S13649 (daily ed. Sept. 25, 1986), while the House version of the bill used the term "cocaine freebase." H.R. 5394, 99th Cong., 2d Sess. § 101 (1986). Nothing in the legislative history indicates that "cocaine freebase" and "cocaine base" were not used synonymously. At the same time that these bills were being considered, the House Committee on the Judiciary issued an unrelated report which made reference to "Crack, the street name for cocaine freebase, a preparation of cocaine hydrochloride and sodium bicarbonate." Thus, because the House was using "cocaine freebase" as a synonym for "crack," and the Act used "cocaine base" as a synonym for "cocaine freebase," it is logical to assume that cocaine base was used in the Act as a synonym for crack. *Shaw*, 936 F.2d at 415–16.

cludes salt forms of cocaine, including cocaine hydrochloride.

The First Circuit and the Sixth Circuit defined cocaine base by distinguishing it from cocaine hydrochloride in functional and physical terms. For example, the First Circuit noted, "Cocaine hydrochloride is water soluble, formed in crystals or flakes, and generally snorted by users. Cocaine base is not water soluble, concentrated in hard rock-like form, and generally smoked." *U.S. v. Barnes*, 890 F.2d 545, 552–3 (1st Cir. 1989). *See also U.S. v. Levy*, 904 F.2d 1026, 1033 (6th Cir.1990).

In *U.S. v. Van Hawkins*, 899 F.2d 852, 854 n. 2 (9th Cir.1990), the Ninth Circuit adopted the chemical definition set forth by the D.C. Circuit in *Brown*. The court stated, "The term 'cocaine base' is cocaine that contains an active hydroxylion. As such, it is distinguished from cocaine salts. The term cocaine base encompasses 'crack'." However, in *U.S. v. Shaw*, 936 F.2d 412 (9th Cir.1991), the court explicitly rejected the *Brown* definition, stating:

Statements made by sponsors of the legislation in both houses indicate concern with crack. For example, Representative Annunzio stated, "Today we are seeing a new impetus to cocaine generated by the so-called 'crack,' which is smoked rather than snorted. It is relatively inexpensive and highly dangerous." Similarly, Senator Hecht stated:

I wish to point out to my collegues that the escalation of drug abuse is shown not only by the number of the scourge's victims, but may also be measured in the potency and availability of today's illicit drugs. The purified form of cocaine known as "crack," for example, has lead to a number of drug related deaths.

*Shaw*, 936 F.2d at 416 (citations omitted).

In light of the agreement among the various Circuits, the legislative history of the Act, and the statements of sponsors of the Act, it cannot be seriously doubted that whatever Congress intended by the term cocaine base, it intended to include what is commonly known as crack in that definition. However, no Court has reached a precise definition of the term "crack." For example, in *Shaw*, 936 F.2d at 416, the Ninth Circuit stated, "[W]e understand [crack] to mean cocaine that can be smoked, unlike cocaine hydrochloride." This definition is imprecise; crack is but one of several forms of cocaine which can be smoked.[3]

We conclude that neither Congress nor the [Sentencing] Commission intended the term "cocaine base" to be defined by the presence of a hydroxylion or by testing basic rather than acidic. Instead, we conclude Congress and the Commission must have intended the term "cocaine base" to include "crack" or "rock cocaine," which we understand to mean cocaine that can be smoked, unlike cocaine hydrochloride.

*Id.* at 416.

3. The Merck Manual, which was referred to by Defendant's counsel at the hearing before the Court, states:

The smoking of "free-base" cocaine (*one version is now widely labeled as "crack"*) has become popular. This necessitates the conversion of the hydrochloride salt to the more combustible form. A flame is held to the converted material and the smoke is inhaled. The speed of onset is shortened and the inten-

The evidence presented to this Court indicates that "crack" is best defined as a form of cocaine which results from conversion of cocaine hydrochloride by a specific process. Mr. Godino stated that the current method of crack production begins by dissolving in water one part cocaine hydrochloride and four parts sodium bicarbonate. The resulting solution is heated until it bubbles and an oily layer forms on the top. The solution is then cooled. The water is decanted off leaving crystals on the bottom of the container. These crystals are what is known as "crack." Tr. 46–47. Crack differs from cocaine hydrochloride in that crack often appears in a rocklike lumpy tan or brown form, is insoluble in water, and has a relatively low melting point which enables it to be smoked. Cocaine hydrochloride usually takes the form of a fluffy white powder, is soluble in water, and has a higher melting point which makes it difficult to smoke. Tr. 51–54.

### B. *Application to the facts of this case*

■ The evidence in this case indicates that what Madison possessed at the time of his arrest was crack. Mr. Godino testified that the sample seized from Madison at the time of his arrest consisted of 44% cocaine base, commonly known as crack, and 56% sodium bicarbonate. Tr. 58, 60. The sample contained no cocaine hydrochloride. Tr. 60. Sergeant Canale testified that he participated in the arrest of Madison and the

seizure of the sample at issue here. He stated that his observations of the shape, color, and consistency of the sample led him to conclude that the substance was crack. Furthermore, the price which Madison told Sergeant Canale that he paid for the drugs was consistent with the price of crack at the time of the Defendant's arrest. Tr. at 145.

As discussed above, crack clearly falls within the meaning of cocaine base as used in § 841(b). Accordingly, Madison has failed to show that the statute is impermissibly vague with respect to the facts of his case.[4] *Mazurie*, 419 U.S. at 550, 95 S.Ct. at 714.

### II. RATIONAL BASIS

■ Madison argues that the distinction made between cocaine and cocaine base in the statute and in the Guidelines is not based on any rational criterion. Acts of Congress are reviewed with considerable deference and are not upset if they bear a "reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory." *Nebbia v. New York*, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934).

It is clear that Congress had a rational basis for distinguishing between crack and other forms of cocaine in the Act. The Second Circuit considered a challenge to the cocaine base penalty in *U.S. v. Collado–Gomez*, 834 F.2d at 280–81, and found

---

sity of the high is magnified. Because the extraction utilizes flammable solvents, there have been serious explosions and burns.
*The Merck Manual of Diagnosis and Therapy* 1491 (Berkow ed., 15th ed. 1987) (emphasis added).

4. If there was question as to the nature of the substance involved in this case, then Madison's vagueness challenge might have been more persuasive. For example, in *U.S. v. Jackson*, 768 F.Supp. 97, 99 (S.D.N.Y.1991), Judge Lasker found that the substance involved was "soft, sticky, oily and brownish" and only 27% pure. Because it was unclear whether the substance could be smoked as crack, Judge Lasker ruled that the absence of a specific definition of cocaine base made it unclear whether the substance seized was proscribed by the statute. *Id.* at 101. Accordingly, he found that application of the statute in that situation would be unconstitutional, and ordered that the defendant be

sentenced for possession of cocaine rather than cocaine base. Here, however, it is clear that what Madison possessed was crack.

Mr. Godino testified that cocaine occurs in nature as a "free base" and that an analysis of an unprocessed coca leaf would indicate the presence of cocaine base. Tr. 12. Therefore, under the chemical definition adopted by the D.C. Circuit in *Brown*, coca leaves or a crude form of cocaine such as "cocaine paste" could be considered cocaine base under § 841. However, the same substances would not be considered cocaine base under the Ninth Circuit's definition in *Shaw*, because that definition only encompasses crack. Such a disparity would argue for finding the statute void-for-vagueness if the substance involved was a crude form of cocaine such as cocaine paste, rather than the refinement of cocaine hydrochloride which is commonly called crack.

that "Congress' purpose of singling out particularly insidious drug transactions for enhanced punishment is ... clear," and that the Act was based on "Congress' clear, unequivocal, and rational purpose." In *U.S. v. Buckner*, 894 F.2d 975, 978–79 (8th Cir.1990), the Court rejected a similar challenge to the one raised here, noting that Congress considered cocaine base to be more dangerous to society than cocaine because of crack's potency, its highly addictive nature, its affordability, and its increasing prevalence. Accordingly, because Congress stated a rationale for the distinction between the penalty for cocaine and that for cocaine base in the form of crack, Madison's argument is without merit.

## III. EQUAL PROTECTION

■ Madison makes a bare allegation that enforcement of the cocaine base penalty in the statute and guidelines deprives him of equal protection of the law. While the equal protection clause of the Fourteenth Amendment has no counterpart in the Constitution applicable to the federal government, it is clear that unreasonable discrimination by the federal government violates the guarantee of equal protection implicit in the due process clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). It is well established, however, that legislative classifications based on non-suspect criteria and not involving fundamental rights do not violate equal protection unless they have no reasonable or rational basis. *Castellano v. Board of Trustees of Police Officer's Variable Supplements Fund*, 937 F.2d 752 (2d Cir.1991), *citing Exxon Corp. v. Eagerton*, 462 U.S. 176, 196, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983); *Texaco Inc. v. Short*, 454 U.S. 516, 539 & n. 36, 102 S.Ct. 781, 797 & n. 36, 70 L.Ed.2d 738 (1982); *Western & Southern Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 672, 101 S.Ct. 2070, 2085, 68 L.Ed.2d 514 (1981). "If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Id.*

The distinction in sentencing made between cocaine and cocaine base in the form of crack does not involve a suspect classification or a fundamental right. Therefore, "reasonable basis" is the appropriate standard of review. As explained in part II of this opinion, the cocaine base penalty provision does have a reasonable basis, and so does not deprive Madison of equal protection of the law. *See U.S. v. Pineda*, 847 F.2d 64, 65 (2d Cir.1988); *U.S. v. Cyrus*, 890 F.2d 1245 (D.C.Cir.1989)

## CONCLUSION

For the reasons stated above, Defendant's motion for an order declaring the distinction in sentencing between cocaine and cocaine base unconstitutional is denied. Defendant will be sentenced for possession with intent to distribute over 50 grams of cocaine base in the form of crack.

IT IS SO ORDERED.