UNITED STATES of America

v.

Dennis MICHAEL, Defendant.

Crim. A. No. 91–501.

United States District Court,
District of Columbia.

March 13, 1992.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Now before the Court is the defendant's motion for a new trial or in the alternative for reconsideration of the Court's denial of the motion for judgment of acquittal. After careful consideration of the motion and the government's opposition thereto, the Court shall deny the motion for the reasons that follow.

### FACTS

On August 1, 1991 at approximately 9:00 a.m. Officer Poskus and Officer Beldon stopped a Chevy van for a traffic violation. When they discovered that the driver of the vehicle did not have a valid operator's permit, they arrested the driver. Mr. Michael, a passenger in the vehicle, was ordered out of the vehicle. After the officers called for a tow truck to remove the vehicle, Mr. Michael asked the officers if they would give him a ride to the seventh district. The officers agreed to give Mr. Michael a ride

to the station, but Officer Poskus informed Mr. Michael they would only do so if he consented to a pat-down for weapons. Mr. Michael subsequently consented to the pat-down search. When Officer Poskus did the pat-down, he felt a hard, square-shaped object around the defendant's right ankle which the officer believed could have been a short-barrelled .25 caliber pistol. Officer Poskus immediately removed the object, and a field test indicated the substance was cocaine. The total weight of the cocaine seized was 26.75 grams.

Mr. Michael subsequently was arrested and charged with possession with intent to distribute crack cocaine. A one count indictment was returned charging that Mr. Michael violated 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(iii).

Mr. Michael was tried before a jury beginning on January 7, 1992. During the trial, the government called Detective Stroud of the Metropolitan Police Department as an expert. Detective Stroud testified in part that the quantity of drugs possessed by Mr. Michael was consistent with an intent to distribute. DEA chemist Elizabeth Cromer also testified as an expert for the government, without objection by the defendant. She testified that she analyzed the drugs using infrared spectrometry and determined that the substance was cocaine base. Ms. Cromer described the analytical process she used as follows:

> Basically, it's a method where you're shining a beam of light through the sample, and it makes the molecules move, so it gives you a picture, like a spectrum, a printout of what the sample, what's contained in the sample, and it's a unique identification tool, because no two chemicals have the same infrared spectrum.

Ms. Cromer also indicated that the substance was in rock form before she pulverized it and that the substance was very brittle. On cross examination, Ms. Cromer indicated that the substance contained hydrogen molecules, but no hydrogen nucleus. She indicated that she did not analyze the substance for the presence of hydroxyl radical bases.

At the government's request and over the objections of the defendant, the Court instructed the jury on the lesser included offense of possession at the close of the case. The jury verdict form also included the lesser included offense. The jury rendered a verdict of not guilty of possession with intent to distribute and guilty of the lesser included charge of unlawful possession under 21 U.S.C. § 844(a).

■ At the conclusion of the government's case, the defendant moved for judgement of acquittal in part because there was no indicia of distribution other that the amount of cocaine and Officer Stroud's expert testimony that the amount was consistent with an intent to distribute. Indicia of distribution that were notably absent included ziplock baggies, smaller amounts of individually packaged cocaine, large sums of money, and beepers. The defendant argued that the amount of cocaine standing alone was insufficient as a matter of law to demonstrate an intent to distribute. This argument has been rendered moot by the jury's not guilty verdict on the possession with intent to distribute charge.

The defendant also argued that the lesser included offense instruction for possession of cocaine base under 21 U.S.C. § 844(a) was inappropriate because the statute requires a mandatory minimum of five years. Additionally, the defendant moved for a judgment of acquittal on the grounds that the government had failed to establish that the substance was cocaine base. Defendant now moves for a new trial or for a motion for judgment of acquittal on the same grounds.

## ANALYSIS

1. *Lesser Included Offense Instruction.*

■ On the issue of the lesser included offense instruction, the defendant argues essentially that Congress intended to create a separate offense when it enacted an enhancement for the possession of a particular quantity of a particular drug, i.e., the five year minimum mandatory sentence for possession of five grams or more of cocaine

base. Defendant argues that because proof of possession of cocaine base under § 844 requires proof that the substance possessed was cocaine base, and that proof of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a) does not require proof of the nature or amount of the controlled substance, it is not a lesser included offense.

After reviewing the statutory provisions carefully, the Court is convinced that neither the specific nature of the substance nor the amount of the substance are essential elements of either § 844 or § 841. Both statutory provisions refer in the language describing the unlawful acts to "a controlled substance." The acts described in the statute are unlawful regardless of the amount of the controlled substance involved or the nature of the substance involved. It is only in the penalty provisions that the nature and quantity of the substance becomes relevant. *See e.g., United States v. Anthony McDonald*, 777 F.Supp. 43 (D.D.C.1991). Accordingly, the defendant's motion for a new trial on the basis that the lesser included offense instruction was given improperly shall be denied.

2. *Expert Testimony on Nature of Substance.*

■ The defendant also argues that the government failed to demonstrate that the substance was cocaine base, as defined in *United States v. Brown*, 859 F.2d 974 (D.C.Cir.1988). In *Brown*, appellant Jim Brown was challenging his conviction and sentence under 21 U.S.C. § 841(b) by arguing that the phrase "cocaine base" was unconstitutionally vague. The court rejected appellant's challenge, holding that

> [t]he fact that "cocaine base" may have various interpretations on the street does not make it incapable of objective definition by means of chemical analysis.

Unfortunately, the court also included language that created the confusion that resulted in this motion. In that case, the D.C. Circuit stated

> [t]he government adopts the nomenclature of organic chemistry which classi-

fies compounds with the hydroxyl radical (OH−) as a base and those with hydrogen nucleus (H+) as an acid. "Cocaine base" therefore is any form of cocaine with the hydroxyl radical; "cocaine base" excludes, for example, salt forms of cocaine. The appellant fails to show why this definition is unreasonable.

A review of the record before the Circuit on the *Brown* appeal indicates that the definition was not raised by the government or by the defense at the trial level. Additionally, there is no evidence that the government proffered the precise definition that the court states the government adopted at the appellate level. Government counsel in this case indicates that the definition cited by the court in *Brown* apparently came not from an expert witness at trial or from the government on appeal, but from materials that were not part of the trial court record. Apparently, defense counsel on the *Brown* appeal referred during oral argument to various definitions propounded by various parties in other proceedings to show variations in the definition of cocaine base. After reviewing the record in *Brown*, the government's assertion, which was unrebutted by defense counsel, about the source of the definition appears accurate.

Additionally, there is scientific evidence that indicates the definition in *Brown* is simply incorrect. Although this evidence unfortunately was not developed fully at trial in this case through an expert witness, as might have been preferable, the Southern District of New York recently recognized the error in the *Brown* definition. *See United States v. Jackson*, 768 F.Supp. 97 (S.D.N.Y.1991). In that case, two chemists refuted the claim that cocaine base is defined by the presence of hydroxyl radical. The district court then concluded that "there is sufficient disagreement in the scientific community as to the accuracy" of the definition cited in *Brown*, that it would be "irresponsible to rely on it." Accordingly, this Court will not adopt the definition of cocaine base as propounded by the court

**4**

in *Brown.*[1]

 Even assuming that the Circuit was correct in its definition of cocaine base, the *Brown* decision clearly did not indicate that that was the sole acceptable definition of cocaine base. An expert is presumed, unless shown otherwise, to know the difference between cocaine base and cocaine hydrochloride. *See United States v. Turner,* 928 F.2d 956, 960 n. 1 (10th Cir.1990). In this case, the defendant did not demonstrate that the DEA chemist could not distinguish between cocaine base and cocaine hydrochloride or that there was any actual dispute over whether the substance seized and analyzed in this case was cocaine base.

Additionally, the Court notes that although the *Brown* decision has resulted in some confusion among lawyers and judges who try to interpret scientific information, there is no such confusion when the term is assigned its ordinary meaning. For example, there are differences in the physical properties of cocaine hydrochloride and cocaine base that allow cocaine base to be smoked while cocaine hydrochloride cannot be smoked. These are differences that even a casual, uneducated drug user understands, without the aid of expert testimony. Furthermore, the DEA chemist expressed no doubt that the substance she analyzed in this case was cocaine base. As stated earlier, the Court presumes, absent a showing otherwise, that the DEA chemist who was qualified and testified as an expert without objection by the defendant, knows the difference between cocaine base and cocaine hydrochloride. Therefore, the Court finds that the expert testimony offered by the DEA chemist was sufficient to establish that the defendant possessed cocaine base. Accordingly, the Court shall deny the motion for judgement of acquittal.

---

**1.** The Court hopes that the United States Court of Appeals for the D.C. Circuit will use this opportunity, if the court has not already done so, to remove the unnecessary confusion that surrounds this issue by clarifying its decision in *United States v. Brown,* 859 F.2d 974 (D.C.Cir. 1988).