**UNITED STATES of America,**

v.

**Frank JACKSON, Defendant.**

**No. 89 Cr. 448 (MEL).**

United States District Court,
S.D. New York.

July 12, 1991.

See also 736 F.Supp. 474.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Thomas McC. Souther, Asst. U.S. Atty., of counsel), for U.S.

Leonard F. Joy, The Legal Aid Soc., Federal Defendant Services Unit, New York City (David B. Levitt, of counsel), for defendant.

LASKER, Senior District Judge.

Frank Jackson is before this court for sentencing pursuant to his plea of guilty to possession with intent to distribute cocaine base or "crack." Based on information that developed between the time of his guilty plea and this sentencing proceeding, Jackson now challenges the application of the statute providing enhanced penalties for offenses involving cocaine base on constitutional grounds as void for vagueness.

The circumstances surrounding Jackson's offense were as follows: In May of 1989, Jackson and another man, Frank Culmer, were passengers in a car that was stopped by the police. A search of the car revealed a brown paper bag containing 125 grams of a substance which was identified by the government as cocaine and 300 grams of a substance which was identified by the government as cocaine base or "crack". The police had observed Culmer attempting to conceal the bag underneath the front seat of the car. Jackson and Culmer were arrested and charged with possession with intent to distribute cocaine and cocaine base. Subsequent to his arrest, Jackson told the police he had agreed to help Culmer complete a drug transaction by standing at a distance and posing as a potential customer in exchange for money. Jackson has stated in a letter to the court that Culmer never told him what type or quantity of drugs were involved, but that he "figured it would be some types of cocaine."

On May 21, 1990, Jackson pled guilty to possession with intent to distribute cocaine base under 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2.

Upon receiving the presentence report prepared after his guilty plea, Jackson learned for the first time that the substance seized at the time of his arrest which had been identified by the government as cocaine base was only 27% pure.

The low level of purity of the substance prompted Jackson's counsel to conduct a further investigation. Jackson moved in November of 1990 for an order that the substance identified as cocaine base be retested to determine whether it had been correctly classified. Dr. Morris Zedeck, an expert chemist retained by counsel for Jackson, stated in an affidavit in support of the motion that his review of the DEA chemist's notes indicated that the chief test relied upon by the DEA to differentiate between cocaine base and cocaine hydrochloride had not been properly performed. The motion to retest the substance was granted and Dr. Zedeck performed two sets of tests on samples of the substance. Dr. Zedeck concluded that although the substance in question demonstrated certain qualities sometimes associated with cocaine base or "crack,"

The form of the material being soft, sticky, oily and brownish indicates the presence of impurities. Pure cocaine would not have left an oily residue after ether extraction. Crack is supposed to be a whitish, dried, hard pellet. It is difficult to predict whether this material could have been used as crack.

■ On the basis of these findings, Jackson contends that the law punishing offenses involving cocaine base more severely than offenses involving other forms of cocaine violates the Fifth Amendment to the United States Constitution because it is unconstitutionally vague with respect to what constitutes cocaine base.

## I. The Void-for-Vagueness Doctrine

[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

*Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

In *Kolender,* the Supreme Court noted that

Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." [quoting *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 1247–48, 39 L.Ed.2d 605 (1974)].

As the Court had explained in *Grayned v. Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972),

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.... [I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

■ Before a statute can be found to be unconstitutional for vagueness, a defendant must show that a law is impermissibly vague with respect to the facts of his case. *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).

## II. The Statute

In 1986, Congress passed the Anti–Drug Abuse Act which amended 21 U.S.C. § 841 to require that the sentence for distribution of cocaine *base* be substantially greater than the sentence for the identical crime involving cocaine. Under the statute and the Sentencing Guidelines, § 2D1.1, only ¹⁄₁₀₀ the amount of cocaine base is required to reach the same penalty as for the equivalent amount of cocaine hydrochloride. Neither the statute nor the guidelines provide a definition of cocaine base. In contrast, statutory definitions are provided for cocaine as well as for other drugs such as heroin and marijuana.

Jackson contends that the statute and the Sentencing Guidelines imposing substantially enhanced penalties for offenses involving cocaine base unconstitutionally vague and ambiguous because neither the statutes not the guidelines specifically define cocaine base.

## III. Application of the Statute

■ As explained above, the federal drug laws do not define cocaine base, generally known as "crack." A review of the opinions which discuss application of the statutory provisions referring to cocaine base reveals that courts have not arrived at a uniform, consistent definition of what constitutes cocaine base. Indeed, within a single circuit, different panels in different cases have enunciated contradictory definitions.

In *United States v. Shaw,* 936 F.2d 412 (9th Cir.1991), the Court of Appeals for the Ninth Circuit recently stated:

Neither the statute nor the guideline define "cocaine base." The commentary to the guideline, however, equates cocaine base with "crack." U.S.S.G. § 2D1.1, comment. (n. 10, Drug Equivalency Tables). ("1 gm of Cocaine Base ('Crack')—100 gm of cocaine/20 gm of heroin"). The term "crack" generally refers to "very pure cocaine intended for smoking rather than inhalation." New Dictionary of American Slang 85 (R. Chapman ed. 1986). It is synonymous with "rock" cocaine. Id. at 361 (defining "rock" as a "[a] small cube of very pure cocaine, intended for smoking rather than inhalation").... [W]e conclude that Congress and the Commission must have intended the term 'cocaine base' to include 'crack,' or 'rock cocaine,' which we understand to mean cocaine that can be smoked, unlike cocaine hydrochloride.[1]

Curiously, the Court of Appeals in the *Shaw* case went on to state:

Of particular importance to this case, we have seen no statements indicating an interpretation of "cocaine base" as cocaine that contains a hydroxylion. Nor have we seen any statements indicating that "cocaine base" refers to cocaine that is a base for chemistry purposes. We conclude that neither Congress nor the Commission intended the term "cocaine base" to be defined by the presence of a hydroxylion or by its testing basic rather than acidic.

What is perplexing about this statement is that the Court of Appeals for the Ninth Circuit in a different case decided approximately one year before the *Shaw* case declared that "The term 'cocaine base' is cocaine that contains an active hydroxylion." *United States v. Van Hawkins*, 899 F.2d 852, 854 n. 2 (9th Cir.1990). Although the

*Van Hawkins* case is cited by the *Shaw* court in the paragraph following the paragraph quoted above, the *Shaw* court ignores the differences between its definition of cocaine base and that put forward in *Van Hawkins*.

The apparent inconsistency cannot be resolved by simply stating that cocaine base includes any substance which falls within either the *Shaw* or the *Van Hawkins* definition. Not only was the *Van Hawkins* definition explicitly rejected by the *Shaw* court, but Dr. George Robert Schwartz, who was accepted by the trial court as an expert in the fields of chemistry and toxicology in the case of *United States v. Turner*, 928 F.2d 956 (10th Cir.1991), testified in that case:

MS. HOLLANDER: If you say that cocaine base was defined as any form of cocaine with a hydroxyl radical [hydroxylion], am I correct that your opinion would be that would be incorrect?

DR. SCHWARTZ: That is right.

MS. HOLLANDER: The definition I am working with, any form of cocaine with hydroxyl radical. And you're saying that does not define the substance that we are referring to here today?

DR. SCHWARTZ: Not to my knowledge, experience and not by any other ten chemistry books I brought in.

This testimony, and the statement of the court in *Shaw*, indicate that there is sufficient disagreement in the scientific community as to the accuracy of the *Van Hawkins* definition that it would be irresponsible for a court to rely on it.[2]

In a situation such as this where crack or cocaine base is the legal equivalent of one hundred times the same amount of cocaine, it is essential that courts and other law enforcement authorities know with a high

---

**1.** We note that the Court of Appeals for the Ninth Circuit had to resort to the "New Dictionary of American Slang" in order to establish the meaning of the key term of the statute.

**2.** The *Van Hawkins* definition was also adopted by the Court of Appeals for the District of Columbia Circuit in *United States v. Brown*, 859 F.2d 974 (D.C.Cir.1988). Rejecting the defendant's claim that the crack statute is void for vagueness, the *Brown* court declared:

The government adopts the nomenclature of organic chemistry which classifies compounds with the hydroxyl radical (OH −) as a base and those with the hydrogen nucleus (H +) as an acid. "Cocaine base" therefore is any form of cocaine with the hydroxyl radical ...

859 F.2d at 976.

 

degree of certainty what constitutes cocaine base. As the cases discussed above demonstrate, the courts that have considered this problem have offered a variety of different and sometimes inconsistent definitions of cocaine base.[3]

## IV. Vagueness in This Case

The lack of a specific definition of cocaine base makes it unclear whether the substance seized in this case is proscribed by the cocaine base aspect of the statute.

The findings of Dr. Zedeck (quoted above) indicate that the substance labelled by the government in this case as cocaine base does not comport with the *Shaw* court's definition of cocaine base or crack as "very pure cocaine intended for smoking rather than inhalation." Dr. Zedeck found that the substance was "soft, sticky, oily and brownish," and he doubted whether the substance could be used as crack because of its highly impure state.

As noted above, the *Shaw* court's definition of cocaine base is significantly different from that enunciated by courts in other cases such as *Van Hawkins* and *Brown*. Those differences cannot be ignored. While the substance in question here might meet the *Van Hawkins* definition of cocaine base, as explained above, it clearly falls outside the *Shaw* definition.

Although courts that have previously addressed this issue have rejected claims that the statute in question is void for vagueness, none of them was explicitly confronted with the situation that confronts us in this case: namely, that the substance in question may or may not be cocaine base depending upon which definition the chemist, the prosecutor or the court chooses to adopt. Congress and the Sentencing Commission have provided no guidance as to how the relevant authorities are to choose between competing definitions and it would offend notions of due process for us to attempt to do so here.

Accordingly, we hold that Jackson has established that the statutory and guideline provisions imposing enhanced penalties for offenses involving cocaine base are unconstitutionally vague both on their face and as applied to this particular case.

Jackson's sentence will be calculated based on the assumption that the substance in question is cocaine rather than cocaine base.

---

3. *See also United States v. Turner*, 928 F.2d 956, 960 (10th Cir.1991) (rejecting void for vagueness claim, stating "[W]e need not here attempt to adopt a precise chemical definition of cocaine base," and citing expert testimony that "cocaine base is a precipitate formed by removing an acid (e.g., hydrochloric acid) from a salt form (e.g., cocaine hydrochloride), leaving only the basic cocaine.... Cocaine base and cocaine hydrochloride have different molecular weights.... [A] chemist can easily differentiate between the two based on their melting points."); *United States v. Avant*, 907 F.2d 623, 625–27 (6th Cir.1990) (rejecting void for vagueness challenge based on conclusion that "crack" falls within definition of cocaine base without defining either crack or cocaine base); *United States v. Barnes*, 890 F.2d 545, 552–53 (1st Cir. 1989) ("Cocaine base is not water soluble, concentrated in a hard rock-like form, and generally smoked."); *United States v. Williams*, 876 F.2d 1521, 1525 (11th Cir.1989) (court declared "those concerned with the relevant legislation understood cocaine base to refer to crack and intended to enhance penalties for crack dealers," but did not define "crack").