UNITED STATES of America, Appellee,

v.

Joaquin PALACIO, also known as Ruben Zapata, Defendant–Appellant.

No. 1587, Docket 92–1618.

United States Court of Appeals, Second Circuit.

Argued May 26, 1993.

Decided Aug. 31, 1993.

John Apicella, Brooklyn, NY, for defendant-appellant.

Judith Lieb, Asst. U.S. Atty., Brooklyn, NY (Mary Jo White, U.S. Atty., Peter A. Norling, Asst. U.S. Atty., on the brief), for appellee.

Before: NEWMAN, Chief Judge, FEINBERG, Circuit Judge, and KELLEHER,* District Judge.

JON O. NEWMAN, Chief Judge:

Congress has specified more severe penalties for offenses involving cocaine base than for offenses involving cocaine hydrochloride. *See* 21 U.S.C. § 841(b)(1)(A)(iii), (B)(ii)(II) (1988). Though the purpose of the higher penalty is to deter traffic in crack, a common form of cocaine base, this Circuit has ruled that the higher penalties for cocaine base apply to any substance within the chemical definition of cocaine base, whether or not it is crack. *See United States v. Jackson,* 968 F.2d 158 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992). This appeal presents the narrow issue whether the higher sentence for cocaine base is unconstitutional when imposed for an offense involving a cocaine base, other than crack, that is acknowledged to be a precursor to its conversion into cocaine hydrochloride. Additionally, this appeal requires us to consider

the effect of a proposed amendment to the Sentencing Guidelines commentary defining the term "cocaine base" in the Guidelines more narrowly than we defined the statutory term. The issues arise on an appeal by Joaquin Palacio from the September 30, 1992, judgment of the District Court for the Eastern District of New York (Reena Raggi, Judge) sentencing him to ten years' imprisonment for drug offenses. We affirm.

## Background

On November 6, 1991, United States Customs agents arrested Palacio after he attempted, using false identification, to pick up twelve flowerpots that had been flown into John F. Kennedy International Airport from Colombia. The flowerpots contained 2.9 kilograms of cocaine base dissolved into the plastic. A jury found Palacio guilty of the conspiracy and substantive offenses of possessing cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841, 846 (1988).

The primary issue at sentencing appeared to be whether Palacio could constitutionally be sentenced under the guidelines applicable to cocaine base, as opposed to the less severe guidelines applicable to cocaine hydrochloride. This issue arose because, as the Government conceded, the cocaine base embedded in the flowerpots was likely to be converted into cocaine hydrochloride before sale. However, Judge Raggi concluded that a decision on the constitutional issue was unnecessary because, whether Palacio was sentenced for cocaine base or cocaine hydrochloride, he would receive a sentence of ten years. She reached this conclusion by first assuming that the controlled substance was cocaine base.

Starting with the base offense level of 38 for 2.9 kilograms of cocaine base, *see* U.S.S.G. § 2D1.1(c)(3), she added two levels for obstruction of justice, *id.* § 3C1.1, and subtracted four levels for minimal role, *id.* § 3B1.2(a), to reach an adjusted offense level of 36. She then departed downward from the sentencing range of 188 to 235 months

---

* The Honorable Robert J. Kelleher of the United States District Court for the Central District of California, sitting by designation.

(based on a criminal history category of I) and imposed a sentence of ten years, the statutory mandatory minimum for a conviction with this quantity of cocaine base. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (1988). Judge Raggi offered two related reasons for the departure: first, Palacio's role was minimal to an extent not contemplated by the Commission, and second, the Commission, in setting the quantity tables, did not consider the difference between cocaine base in the form of crack and cocaine base that is a precursor to cocaine hydrochloride.

Alternatively, Judge Raggi ruled that even if she were to sentence Palacio for cocaine hydrochloride, she would still impose a sentence of ten years. She said:

> I sentence the defendant to ... 120 months. I note that if I were to have treated this case as a [cocaine] hydrochloride case, that [120–month sentence] would have been within the sentencing range that I could have sentenced the defendant to and that would have been the sentence, so the sentence would not have been different had I been able to sentence at a hydrochloride range.

As we discuss below, this alternative calculation was incorrect.

### Discussion

I. *Need we resolve Palacio's constitutional claims?*

 Where a sentencing judge indicates that the same sentence would have been imposed under either of two arguably applicable guideline ranges, the dispute about which range is applicable need not be resolved either by the trial court or on appeal. *See United States v. Bermingham*, 855 F.2d 925, 931 (2d Cir.1988). As we have noted, the record clearly indicates that Judge Raggi intended to avoid the necessity of resolving Palacio's contention that he should be sentenced as if the flowerpots contained cocaine hydrochloride. However, in fact Palacio's guideline range sentence would not have been 120 months if the 2.9 kilograms for which he was sentenced had been characterized as cocaine hydrochloride, instead of cocaine base. In that case, the base offense level would have been 28, *see* U.S.S.G.

§ 2D1.1(c)(8), and after adjusting upward for Palacio's obstruction of justice and downward for his minimal role, the adjusted offense level would have been 26. The applicable sentencing range for this adjusted offense level is 63 to 78 months.

The Government contends that Judge Raggi's alternative calculation for cocaine hydrochloride arrived at an adjusted offense level of 30 and a sentencing range of 97 to 121 months. According to the Government, Judge Raggi gave Palacio the four-level minimal role reduction only when assuming that he would be sentenced for cocaine base and withheld this reduction when assuming alternatively that he would be sentenced for cocaine hydrochloride. In the Government's view, the Judge added two levels for obstruction of justice to the base offense level of 28 for cocaine hydrochloride and arrived at an adjusted offense level of 30.

We need not decide whether such an inconsistent treatment of a minimal role adjustment would have been proper because Judge Raggi did not do what the Government suggests. Instead, she simply made an inadvertent mistake by starting her alternative calculation on the assumption that the base offense level for 2.9 kilograms of cocaine hydrochloride is 32:

> I do note that *if the quantity in this case, which is just under three kilos ... [were cocaine h]ydrochloride, we would be at level 32,* which would be 121 to 151 months, but there would be then the two point enhancement for obstruction, the possible four point diminution for role in the offense. It would still bring us to a guideline level that would be in the 10 year range.

(emphasis added). In fact, as we have noted, the base offense level for 2.9 kilograms of cocaine hydrochloride is not 32, but 28. *See* U.S.S.G. § 2D1.1(c)(8). Because Judge Raggi erred in her alternative guideline calculation and because under a correct calculation, she could not have sentenced Palacio to the same 120 months he received when sentenced for cocaine base, we must resolve the dispute as to whether Palacio can be consti-

tutionally sentenced under the statutory provisions applicable to cocaine base.

## II. *The constitutional claims*

Palacio argues that since the substance he possessed was a precursor to cocaine hydrochloride, sentencing him to the more severe penalty applicable to cocaine base violates his right both to due process and to equal protection. In *United States v. Jackson,* 968 F.2d at 163–64, we held that the enhanced penalty provisions of section 841(b) and section 2D1.1 of the Guidelines were not unconstitutionally vague for lack of a definition of the term "cocaine base." Jackson was arrested with a substance that chemists testified was cocaine base but that might not have been pure enough to use as crack. We interpreted the statutory term "cocaine base" according to its scientific definition, that is, a substance that produces a salt when combined with an acid. *Id.* at 161. We expressly declined to infer that Congress intended to limit the term to a common form of cocaine base—namely, crack. *Id.* at 162–63.

■ Palacio's due process argument contends that in his case there is no rational basis for enhancing his sentence just because the substance dissolved into the plastic flowerpots was in the form of a base, as defined in the scientific community, since the Government conceded that the base, once extracted, was likely to be transformed into cocaine hydrochloride before it was sold in the drug trade. Because the enhanced penalty provisions were intended to increase the punishment of drug offenders who deal in highly addictive crack, Palacio continues, those provisions should not apply where there is no evidence that the base will be distributed and consumed as crack. We disagree.

When faced with a due process challenge, we must "determine whether there is 'any state of facts either known or which could reasonably be assumed' to support the statute." *United States v. Murphy,* 979 F.2d 287, 290 (2d Cir.1992) (quoting *United States v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938)). The choice by Congress to enhance the penalties for those who deal in any form of cocaine base, regardless of its ultimate use, is ration-

al. By defining cocaine base according to its molecular structure, Congress has chosen a scientifically precise method of determining which substances are subject to enhanced penalties and has avoided individualized inquiry into the ultimate use of the substance. Such an inquiry would be difficult because, as Palacio concedes, the cocaine hydrochloride resulting from the transformation of the precursor substance can itself be transformed into crack. *Cf. Chapman v. United States,* —— U.S. ——, ——, 111 S.Ct. 1919, 1928, 114 L.Ed.2d 524 (1991) ("Congress was also justified in seeking to avoid arguments about the accurate weight of pure drugs which might have been extracted from blotter paper had it chosen to calibrate sentences according to that weight.").

Furthermore, Congress acted rationally in drawing this distinction even if some defendants fall outside the scope of the harm Congress primarily intended to target. In *United States v. Agilar,* 779 F.2d 123, 125–26 (2d Cir.1985), *cert. denied,* 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986), we found that a statute that punished all sales within 1,000 feet of a school had a rational basis of deterring drug sales to children even though the sale at issue was made to an adult. Similarly, Congress's purpose of deterring the sale of drugs in a form that can be smoked is rationally served by punishing more severely all defendants who possess cocaine base even if an individual defendant intends to transform the base he possesses into cocaine hydrochloride. Thus, Congress could choose to respond to the "crack problem" by enhancing the penalties for a broad class of cocaine bases. *See United States v. Rodriguez,* 980 F.2d 1375, 1378 (11th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3003, 125 L.Ed.2d 695 (U.S.1993).

Finally, by transporting cocaine in the form of a base, Palacio bore the risk that he would be punished under a scheme designed to punish cocaine in its more potent form. In *United States v. Collado–Gomez,* 834 F.2d 280, 281 (2d Cir.1987), *cert. denied,* 485 U.S. 969, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988), we held that due process is not violated by punishing a person under the enhanced statutory penalty provisions for

crack even if he did not know he was selling crack or the quantity he was selling. We found that the *mens rea* requirement for the substantive crime of selling a controlled substance adequately prevents the conviction of innocent persons. *See also Jackson,* 968 F.2d at 163; *United States v. Obi,* 947 F.2d 1031, 1032 (2d Cir.1991); *United States v. Pineda,* 847 F.2d 64, 65 (2d Cir.1988). Just as a drug dealer must bear the risk of not knowing the amount or type of drugs in which he is dealing, Palacio must bear the risk of being caught prior to fulfilling his asserted intention of converting the cocaine base into cocaine hydrochloride.

■ Palacio also contends that his right to equal protection is violated because the Ninth Circuit has defined the statutory term "cocaine base" as "crack," *i.e.,* "cocaine that can be smoked," *see United States v. Shaw,* 936 F.2d 412, 415–16 (9th Cir.1991), while we have interpreted the term according to its scientific meaning. Initially, it is not clear whether the definition in *Shaw* would exclude the substance embedded in Palacio's flowerpots; the Government asserts that, after the substance is extracted, it can be smoked. Even if the substance is not covered by the definition in *Shaw,* Palacio's equal protection argument fails. A disagreement between circuits as to the meaning of a statute is a matter for resolution by the Supreme Court or by Congress; it does not deny the equal protection of the laws to the person subjected to the more burdensome interpretation.

III. *The proposed Guidelines amendment*

On April 29, 1993, the Sentencing Commission submitted to Congress the following amendment to the commentary to section 2D1.1(c):

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

58 Fed.Reg. 27,156 (1993). The proposed amendment will become effective November 1, 1993, absent action by Congress to the contrary. In its discussion of the amend-ment, the Commission clearly indicates its preference for the Ninth Circuit's interpretation in *Shaw* of the term "cocaine base," as used in the Guidelines, to our interpretation in *Jackson. See id.*

If the amendment becomes effective, we will be bound, for purposes of interpreting section 2D1.1 of the Guidelines, by the commentary's definition of "cocaine base"; the Commission's interpretation does not violate the Constitution or a federal statute and is not inconsistent with, or a plainly erroneous reading of, the guideline. *See Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). Thus, the sentencing range *under the Guidelines* for defendants who possess cocaine base that is not crack will be significantly lowered. For example, after the amendment becomes effective, the base offense level for a defendant like Palacio will be 28, resulting in a sentencing range of 78 to 97 months, compared with a current base offense level of 38, resulting in a sentencing range of 235 to 293 months.

■ Although the Commission's interpretation of section 2D1.1 in the amended commentary will be authoritative with respect to the Guidelines, the amendment cannot revise the statutory interpretation we have already made in *Jackson.* Even if the Commission's pending view of the term "cocaine base" in the Guidelines might have influenced us to adopt a congruent interpretation of the statutory term as an original matter, once we have construed the statute, we will not reinterpret it in the absence of new guidance from Congress. *See Lechmere, Inc. v. NLRB,* —— U.S. ——, ——, 112 S.Ct. 841, 847–48, 117 L.Ed.2d 79 (1992); *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 130–31, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990). At least that is so when our initial construction of a statute is solely the result of an independent judicial interpretation of a statutory term, rather than deference to the reasonable interpretation adopted by an agency. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Mesa Verde Construction Co. v. Northern California Dis-*

*trict Council of Laborers,* 861 F.2d 1124, 1129–31 (9th Cir.1988) (in banc). Indeed, unless the Sentencing Commission is construing its own authority as an agency, *see United States v. Galloway,* 976 F.2d 414, 420–22 (8th Cir.1992) (in banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1420, 122 L.Ed.2d 790 (1993), its view of the substantive meaning of a criminal statute is unlikely to be entitled to any deference. *See Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 2050, 2055, 124 L.Ed.2d 138 (1993) (assumption that Commission's guidelines are relevant to construction of sentencing statute termed "dubious"). Thus, Palacio's sentence at the statutory mandatory minimum for cocaine base would be unaffected by the proposed amendment to the guideline commentary.

Because of the difference in the definitions of "cocaine base" in the statute and the Guidelines after the amendment, defendants like Palacio, who are sentenced for less than five kilograms of a mixture or substance containing a cocaine base that is not crack, often will be sentenced under the statutory mandatory minimum to a higher sentence than would have been imposed under the Guidelines. Though this gap between the mandatory minimum and the guideline range is unusual, we welcome the Commission's demonstration of its independent judgment.

Heretofore, for most drug sentences, the Commission has chosen to calibrate the drug quantity table so that the sentencing ranges for defendants dealing in the quantities designated in section 841(b) will equal or even exceed the mandatory minimums set by Congress, *see* U.S.S.G. § 2D1.1, comment. (n.10), with the sentencing ranges for those who deal in larger quantities even higher than the mandatory minimums. The mandatory minimums have thus become a floor for the guideline ranges.

After the effective date of the amendment to the commentary to section 2D1.1(c), however, a different method of calibration will exist for defendants who deal in cocaine base that is not crack. Perhaps unintentionally, the Commission has in this instance indicated its own view of the culpability of those defendants and has left the statutory minimum to override this view when applicable. Whatever one may think of statutory mandatory minimums, the Commission is to be commended for exercising its own judgment as to the appropriate penalty in this instance, leaving the onus squarely on Congress for requiring a higher sentence. Perhaps in time if more such independent judgments are expressed by the expert body Congress has established to determine normal sentencing ranges, Congress will temper its statutory minimums to accord with the judgments of the Commission.

## Conclusion

We have carefully considered the other points raised by Palacio and find them to be without merit. We therefore affirm the judgment of the District Court.