**UNITED STATES of America,**

v.

**Frank JACKSON, Defendant.**

**No. 89 Cr. 448 (MEL).**

United States District Court,
S.D. New York.

June 24, 1994.

Mary Jo White, U.S. Atty. for the S.D. of New York, New York City (John P. Coffey, Asst. U.S. Atty., of counsel), for U.S.

The Legal Aid Society, Federal Defender Div., New York City (David B. Levitt, of counsel), for defendant.

LASKER, District Judge.

Frank Jackson is present for resentencing pursuant to the remand instructions of the Court of Appeals in *United States v. Jackson*, 968 F.2d 158 (2d Cir.), *cert. denied*, ——— U.S. ———, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992), which vacated this court's decision that the enhanced penalty provisions for cocaine base offenses of 21 U.S.C. § 841(b) and United States Sentencing Guidelines § 2D1.1 are unconstitutionally vague, *United States v. Jackson*, 768 F.Supp. 97 (S.D.N.Y.1991). Jackson presents a number of new arguments why, despite the Court of Appeals' ruling, the enhanced penalty provisions should not apply to his case.

*The Equal Protection Claim*

Jackson's equal protection argument is based on the recent decision in *United States v. Clary*, 846 F.Supp. 768 (E.D.Mo.1994), in which Judge Cahill held that the enhanced penalties for cocaine base offenses violate the equal protection clause because "the actions of Congress [in enacting the enhanced penalties] were influenced and motivated by unconscious racism," *id.* at 797.

The government argues that Jackson's equal protection argument fails because he has not established a discriminatory congressional motive in enacting the enhanced penalty scheme and that, in any event, Jackson has waived this claim because he failed to raise it at his original sentencing.

The government cites no authority for its waiver argument and I conclude that a defendant facing resentencing is not precluded from presenting new arguments to the sentencing court. *United States v. Clary*, 846 F.Supp. 768 (E.D.Mo.1994), on which Jackson bases his equal protection claim, had not been decided at the time of the original sentencing.

Nevertheless, I regretfully find that Jackson's equal protection argument, based as it is on a claim of deliberate Congressional race discrimination, to be without evidentiary support. The grossly disparate impact of the enhanced penalties for cocaine base offenses on African–Americans is well-documented and not disputed. Nor is there a question that a large part of the judiciary and informed public is, in my opinion, properly dismayed by this result. As Justice Kennedy recently stated to a subcommittee of the House of Representatives, "I simply do not see how Congress can be satisfied with the results of mandatory minimums for possession of crack cocaine." N.Y.Times, March 10, 1994, at A22.

■ However, that the enhanced penalties for cocaine base offenses are objectionable as a matter of policy does not render them unconstitutional. A facially neutral law, "even if [it] has a disproportionately adverse effect upon a racial minority, [ ] is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose" on the part of the legislature. *Personnel Adm'r v. Feeney*, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979). The material upon which Jackson relies simply does not establish that Con-

gress enacted the enhanced penalties for cocaine base offenses with the purpose of discriminating against African–Americans or any other group. Indeed, even Judge Cahill attributes only "unconscious racism" to Congress.

It may well be that, as Justice Brennan states, "[A]mericans share a historical experience that has resulted in individuals within the culture ubiquitously attaching a significance to race that is irrational and often outside their awareness." *McCleskey v. Kemp,* 481 U.S. 279, 332, 107 S.Ct. 1756, 1788, 95 L.Ed.2d 262 (1987) (Brennan, J. dissenting) (quoting Lawrence, *The Id, The Ego, and Equal Protection: Reckoning with Unconscious Racism,* 39 Stan.L.Rev. 327 (1987)). However, the Supreme Court has not recognized that the unconscious effects of this experience can be used as a proxy for a showing of discriminatory congressional purpose. Instead, the Court has held that a discriminatory purpose "implies that [Congress] selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' adverse effects upon an identifiable group." *Personnel Adm'r v. Feeney,* 442 U.S. at 279, 99 S.Ct. at 2296. Moreover, a finding of discriminatory intent may well be precluded in this circuit because the Court of Appeals has already concluded, albeit in the context of a rational basis analysis, that "Congress had a valid reason for mandating harsher penalties for crack as opposed to powder cocaine: the greater accessibility and addictiveness of crack." *United States v. Stevens,* 19 F.3d 93, 97 (2d Cir. 1994).

### The Eighth Amendment Claim

■ Jackson's Eighth Amendment argument is based on *United States v. Walls,* 841 F.Supp. 24 (D.D.C.1994), in which Judge Oberdorfer held that the enhanced penalties for cocaine base offenses, as applied to two of the defendants in that case, constituted cruel and unusual punishment in violation of the Eighth Amendment.

However, controlling precedent bars a finding that a sentence of ten years, the statutory minimum, would violate the Eighth Amendment in Jackson's case. It is true that the Eighth Amendment encompasses a proportionality principle which provides some limitation on permissible disparities between the severity of crime and punishment. *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). However, the Supreme Court has found this principle to be violated only in extreme circumstances. *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (life sentence without possibility of parole for crime of recidivism based on seven underlying non-violent felonies violated the Eighth Amendment). *But see Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (40 year prison sentence for possession with intent to distribute nine ounces of marijuana was not unconstitutionally disproportionate); *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (mandatory life sentence without possibility of parole for possession of 672 grams of cocaine was not unconstitutionally disproportionate).

Jackson has pleaded guilty to possession with intent to distribute approximately 300 grams of cocaine base. As explained below, Jackson faces a 10 years prison sentence for this crime. The Supreme Court decisions strongly suggest that this penalty is not unconstitutionally disproportionate to Jackson's offense. If a 40–year prison sentence for possession with intent to distribute nine ounces of marijuana does not violate the Eighth Amendment, it is clear that a 10 year sentence in this case does not.

Moreover, the facts of Jackson's case are not comparable to those of the defendants in *Walls.* The *Walls* defendants were drug "addicts feeding their habit" and were employed by the other defendants for minimal compensation to convert powder cocaine to crack. 841 F.Supp. at 32. They were mere "bit players in the conspiracy" to distribute 538 grams of crack cocaine, but faced mandatory minimum sentences of 10 and 20 years respectively. *Id.*

Jackson's role here was not peripheral. Jackson and co-defendant Frank Culmer were arrested when the police discovered "a brown paper bag containing 125 grams of a substance the government described as cocaine and 300 grams of a substance which was identified by the government as cocaine

base or 'crack'" in the car in which they were passengers. *United States v. Jackson,* 768 F.Supp. at 98. Jackson subsequently "told the police he had agreed to help Culmer complete a drug transaction by standing at a distance and posing as a potential customer in exchange for money." *Id.* Moreover, Jackson's prior record is more severe than that of the *Walls* defendants.

Finally, an Eighth Amendment challenge to the cocaine base penalties has recently been rejected by the Court of Appeals without comment. *United States v. Stevens,* 19 F.3d at 97 (168 month term of imprisonment for conspiring to distribute and possess with intent to distribute between 500 grams and 1.5 kilograms of cocaine base did not violate Eighth Amendment).

For these reasons, Jackson's Eighth Amendment claim is denied.

*The New Definition of Cocaine Base under the Sentencing Guidelines*

■ On April 29, 1993, the Sentencing Commission submitted to Congress the following amendment to the commentary to section 2D1.1(c):

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, "rocklike form."

58 Fed.Reg. 27,156 (1993). The Commission's commentary to the amendment states that it "addresses an inter-circuit conflict" and rejects the Second Circuit's chemical definition of cocaine base specified in *United States v. Jackson,* 968 F.2d 158 (2d Cir.1992) (cocaine base is $C_{17}H_{21}NO_4$), in favor of the Ninth Circuit's narrower definition, *United States v. Shaw,* 936 F.2d 412 (9th Cir.1991) (cocaine base means crack). *Shaw* defines crack as follows:

> The term "crack" generally refers to '[v]ery pure cocaine intended for smoking rather than inhalation.' New Dictionary of American Slang 85 (R.Chapman ed. 1986). It is synonymous with "rock" cocaine. *Id.* at 361 (defining "rock" as "[a] small cube

of very pure cocaine, intended for smoking rather than inhalation").

*Id.* at 415.

The amendment to the Guidelines commentary became effective on November 1, 1993, and the Court of Appeals of this Circuit has stated that, despite its earlier ruling in *Jackson,* this circuit is "bound for purposes of interpreting section 2D1.1 of the Guidelines, by the commentary's definition of 'cocaine base.'" *United States v. Palacio,* 4 F.3d 150, 154 (2d Cir.1993), *cert. denied,* ―― U.S. ――, 114 S.Ct. 1194, 127 L.Ed.2d 543 (1994). "Thus, the sentencing range *under the Guidelines* for defendants who possess cocaine base that is not crack will be significantly lowered." *Id.* (emphasis in original).

It has not, up to now, been determined whether the substance in this case was crack. *United States v. Jackson,* 968 F.2d at 163 (there is "a question whether the substance was pure enough to be used as 'crack'"). The parties have made extensive written and oral submissions on this question in connection with the resentencing.

Both the Presentence Report and the Post Arrest statement taken by the arresting officer indicate that Jackson himself described the substance as crack, (PSR ¶ 10 and Levitt Letter of July 24, 1991 Ex. B), and there is evidence that the substance had the appearance of crack. The Guidelines amendment provides that crack "usually appear[s] in a lumpy, rocklike form" and Judge Kram, who handled the paper bag containing the seized substance at a suppression hearing about eight months after the arrest, concluded "that the hard pieces in the bag could have been reasonably mistaken as a weapon," *United States v. Culmer,* 736 F.Supp. 474, 479 (S.D.N.Y.1990). Judge Kram also noted that the arresting officer testified at the hearing that "the paper bag ... was hard" and that, when the officer opened the bag, he found "large, hard pieces of 'crack' cocaine." *Id.* at 478.

On the other hand, there is a considerable question whether the substance was sufficiently pure to be characterized as crack. The Guidelines amendment implicitly adopts the Ninth Circuit's definition of crack as "[v]ery pure cocaine intended for smoking

rather than inhalation," *United States v. Shaw*, 936 F.2d at 415 (citation omitted). However, according to the DEA lab report, the substance seized in this case was only 27% cocaine and, according to Dr. Morris Zedeck, the toxicologist retained by the defense, the purity level was only 22.7%. Dr. Zedeck concluded that it was "difficult to predict whether this material could have been used as crack." Dr. Zedeck's conclusion tallies with the representation by Jackson's counsel that "Mr. James Flynn, a drug information specialist with the National Institute on Drug Abuse, [ ] revealed that the average purity of crack is 50%." (Levitt Letter of June 28, 1991 at 5).

While the physical appearance of the substance and the defendant's own comments are evidence that the substance was crack, the low purity of the substance is evidence that it was not. The evidence is essentially a stand-off and accordingly I conclude that the government has not met its burden of establishing that the substance was crack by a preponderance of the evidence. *United States v. Onumonu*, 999 F.2d 43, 45 (2d Cir.1993) ("[S]entencing factors need only be proved by a preponderance of the evidence to satisfy due process"). Accordingly, the enhanced penalty provisions for cocaine base offenses under section 2D1.1 of the Sentencing Guidelines do not apply in this case.

■ That, however, is not the end of the matter. Jackson argues that the amended Sentencing Guidelines definition must also be applied in construing the governing statute which imposes a 10 year mandatory minimum sentence in the circumstances of this case. He maintains that the statutory minimum for offenses involving possession of "50 grams or more of a mixture or substance ... which contains cocaine base," 21 U.S.C. § 841(b)(1)(A)(iii), does not apply to him because the government has not shown that the substance in this case was crack.

The problem with this argument, however, is the Court of Appeals' opinion in *United States v. Palacio*, 4 F.3d 150, which appears to have decided the matter precisely to the contrary:

Although the Commission's interpretation of section 2D1.1 in the amended commen-

tary [is] authoritative with respect to the Guidelines, the amendment cannot revise the statutory interpretation we have already made in *Jackson*. Even if the Commission's [ ] view of the term "cocaine base" in the Guidelines might have influenced us to adopt a congruent interpretation of the statutory term as an original matter, once we have construed the statute, we will not reinterpret it in the absence of new guidance from Congress.

*Id.* at 154.

Jackson argues that Congress has provided the requisite "new guidance" because, two months after *Palacio* was decided, Congress negatively approved the amendment to the Guidelines commentary without modification.

As I read *Palacio*, however, it precludes Jackson's argument on this point because, although *Palacio* was decided before the Guidelines amendment took effect, *Palacio* specifically considered the prospective effect of the amendment once adopted by Congress. Indeed, *Palacio* states that "[a]lthough the Commission's interpretation of section 2D1.1 in the amended commentary *will be* authoritative with respect to the Guidelines, the amendment cannot revise the statutory interpretation we have already made in *Jackson*" and that "*Palacio's* sentence at the statutory mandatory minimum *would be* unaffected by the proposed amendment to the guideline commentary." *United States v. Palacio*, 4 F.3d at 154–55 (emphases added). The "new guidance from Congress" that *Palacio* refers to, whatever else it may require, apparently cannot be found in Congress' mere negative ratification of the amendment to the Guidelines commentary. Accordingly, the statutory mandatory minimum for cocaine base offenses, ten years in this case, applies.

Because the Court of Appeals has decided to adhere to the chemical definition of cocaine base for the purpose of construing the statute, but the Guidelines Commission has rejected this definition for the Guidelines, Jackson will be sentenced under the statutory minimum to a higher sentence than would presently be imposed under the Guidelines. The gap between the mandatory minimum and the guideline range, as *Palacio* recog-

nizes, is unusual, and the impact in a case such as this, in my view, produces the very type of hit or miss result which guidelines—whose object is like treatment for like offense and record—are intended to avoid. Indeed, in view of the remarkable result thus produced, I believe it would be in the interest of justice for my ruling to be appealed so that the matter can be further considered by the Court of Appeals.

\*  \*  \*

Jackson's Equal Protection and Eighth Amendment claims are denied. The enhanced penalty provisions for cocaine base offenses under section 2D1.1 of the Sentencing Guidelines do not apply, but the ten year statutory minimum does.

It is so ordered.