UNITED STATES of America, Appellee,

v.

Frank JACKSON, Defendant–Appellant.

No. 1010, Docket 94–1400.

United States Court of Appeals,
Second Circuit.

Argued March 10, 1995.

Decided July 10, 1995.

Steven M. Statsinger, The Legal Aid Society, Federal Defender Div., Appeals Bureau, New York City, for defendant–appellant.

David L. Wales, Asst. U.S. Atty. for the S.D. of N.Y., New York City (Mary Jo White, U.S. Atty., John P. Coffey, Alexandra Rebay, Asst. U.S. Attys., New York City, of counsel), for appellee.

Before: MAHONEY, WALKER, and CABRANES, Circuit Judges.

PER CURIAM:

Defendant–Appellant Frank Jackson appeals from an amended judgment entered August 23, 1994 in the United States District Court for the Southern District of New York, Morris E. Lasker, *Judge,* on remand from this court for resentencing, *see United States v. Jackson,* 968 F.2d 158 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992) (*"Jackson I"*), following Jackson's plea of guilty to one count of possessing with intent to distribute approximately 300 grams of a mixture or substance containing cocaine base in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A), and 18 U.S.C. § 2. On remand, Jackson was sentenced principally to the minimum ten-year term of imprisonment mandated by § 841(b)(1)(A) for persons convicted of possessing with intent to distribute certain mixtures or substances containing fifty grams or more of cocaine base. *See United States v. Jackson,* 856 F.Supp. 176 (S.D.N.Y.1994) (*"Jackson II"*). For the reasons that follow, we affirm the amended judgment of the district court.

Jackson contends on appeal that the district court erred in imposing the ten-year sentence because: (1) the substance that Jackson possessed was not crack, and only

crack is a "mixture or substance ... which contains cocaine base" within the meaning of § 841(b)(1)(A)(iii); (2) the enhanced penalties imposed by § 841(b)(1) [1] upon persons who commit drug offenses involving cocaine base violate the equal protection guarantee of the Fifth Amendment; and (3) the imposition of the ten-year mandatory minimum sentence in this case violates the Eighth Amendment prohibition against cruel and unusual punishments. We address these contentions in turn.

■ On the prior appeal in this case, reversing a district court determination that § 841(b)(1)(A)(iii) was unconstitutionally vague, see *United States v. Jackson,* 768 F.Supp. 97 (S.D.N.Y.1991), we ruled that "a substance that has been identified as 'cocaine base' by chemists but that may not be pure enough to be used as 'crack' falls within the meaning of 'cocaine base' under 21 U.S.C. § 841 and Guidelines § 2D1.1." *Jackson I,* 968 F.2d at 161. On remand, the district court determined that the substance which Jackson had possessed was cocaine base, but not crack, see *Jackson II,* 856 F.Supp. at 179–80, and imposed the mandatory ten-year sentence required by the statute as previously construed in *Jackson I. See Jackson II,* 856 F.Supp. at 181. Jackson urges on this appeal that we revisit the issue, pointing out that the United States Sentencing Commission (the "Commission") has amended the notes following the Drug Quantity Table that constitutes USSG § 2D1.1(c) by defining cocaine base as meaning only "crack," in express disagreement with this circuit's definition of cocaine base in *Jackson I. See* USSG

App. C., amendment 487, effective November 1, 1993.

This court has explicitly rejected this view. In *United States v. Palacio,* 4 F.3d 150 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1194, 127 L.Ed.2d 543 (1994), we held that:

Although the Commission's interpretation of section 2D1.1 in the amended commentary will be authoritative with respect to the Guidelines, the amendment cannot revise the statutory interpretation we have already made in *Jackson.* Even if the Commission's pending view of the term "cocaine base" in the Guidelines might have influenced us to adopt a congruent interpretation of the statutory term as an original matter, once we have construed the statute, we will not reinterpret it *in the absence of new guidance from Congress. See Lechmere, Inc. v. NLRB,* 502 U.S. 527, 535–38, 112 S.Ct. 841, 847–48, 117 L.Ed.2d 79 (1992); *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 130–31, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990).

4 F.3d at 154 (emphasis added).

Jackson attempts to distinguish *Palacio* on the basis that it was decided on August 31, 1993, prior to the effective date (November 1, 1993) of amendment 487. He contends that by allowing amendment 487 to go into effect without modification or disapproval pursuant to 28 U.S.C. § 994(p),[2] Congress provided the "new guidance" that was contemplated by *Palacio,* 4 F.3d at 154, but was unavailable when that case was decided.

---

1. The penalty provisions of § 841(b)(1) are premised upon the quantity of drugs that are involved in the drug offense. The same penalties are provided for an offense involving a substance or mixture containing fifty grams of cocaine base under § 841(b)(1)(A)(iii) as for one containing five kilograms of cocaine (or other drugs) under subsection § 841(b)(1)(A)(ii). The identical hundred-to-one ratio prevails under § 841(b)(1)(B), which equates five grams of cocaine base to 500 grams of cocaine.

2. Section 994(p) provides:
   The Commission, at or after the beginning of a regular session of Congress, but not later than the first day of May, may promulgate under subsection (a) of this section and submit

to Congress *amendments to the guidelines* and modifications to previously submitted amendments that have not taken effect, including modifications to the effective dates of such amendments. Such an amendment or modification shall be accompanied by a statement of the reasons therefor and shall take effect on a date specified by the Commission, which shall be no earlier than 180 days after being so submitted and no later than the first day of November of the calendar year in which the amendment or modification is submitted, *except to the extent that* the effective date is revised or *the amendment is otherwise modified or disapproved by Act of Congress.*
*Id.* (emphasis added).

However, *Palacio* clearly addressed the prospective effect of amendment 487, which had been proposed by the Commission and was pending before Congress when *Palacio* was decided, pointing out that the amendment *"will be* authoritative with respect to the Guidelines ... [but] cannot revise the statutory interpretation we have already made in *Jackson."* 4 F.3d at 154 (emphasis added). *Palacio* further addressed that effect in assessing the future interplay between the Guidelines and the underlying sentencing statute with respect to cocaine base prosecutions, stating that:

> Because of the difference in the definitions of "cocaine base" in the statute and the Guidelines *after the amendment,* defendants ... often *will be* sentenced under the statutory mandatory minimum to a higher sentence than would have been imposed under the Guidelines....

> Heretofore, for most drug sentences, the Commission has chosen to calibrate the drug quantity table so that the sentencing ranges for defendants ... will equal or even exceed the mandatory minimums set by Congress....

> *After the effective date of the amendment* to the commentary to section 2D1.1(c), however, a different method of

calibration *will exist* for defendants who deal in cocaine base that is not crack. 4 F.3d at 155 (emphasis added).

Jackson urges this court to repudiate *Palacio* and follow *United States v. Munoz–Realpe,* 21 F.3d 375, 376–79 (11th Cir.1994). In *Munoz–Realpe,* the Eleventh Circuit disagreed with *Palacio* [3] and abandoned a prior Eleventh Circuit decision, *United States v. Rodriguez,* 980 F.2d 1375 (11th Cir.1992) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 3003, 125 L.Ed.2d 695 (1993), that, like *Jackson I,* had defined "cocaine base" (for both statutory and guideline purposes) to have a chemical meaning not limited to crack. *See Rodriguez,* 980 F.2d at 1377–78. *Munoz–Realpe* ruled that in accordance with the amendment 487 definition of "cocaine base" to mean "crack" for purposes of USSG 2D1.1(c), the Eleventh Circuit would henceforth construe the term "cocaine base" in 21 U.S.C. § 960(b)(1)(C) to mean "crack".[4] *Munoz–Realpe,* 21 F.3d at 377 (finding precedential force of *Rodriguez* "eroded by subsequent Congressional action" in allowing amendment 487 to take effect).

However, "prior opinions of a panel of this court are binding upon us in the absence of a change in the law by higher authority or our own in banc proceeding (or its equiva-

---

**3.** The main point of the disagreement was an assertion that *Palacio* had misconstrued the relevant amendment to USSG 2D1.1(c) as an amendment to commentary, rather than to a guideline. *See Munoz–Realpe,* 21 F.3d at 378. This resulted, in the Eleventh Circuit's view, in an underestimation of the importance of congressional "approval" of the amendment, *id.,* because only a proposed "amendment to the Guidelines themselves (as opposed to commentary or other explanatory matter)" goes through the § 994(p) review process. 21 F.3d at 377.

This analysis involves a misreading of both the guidelines review process and *Palacio.* It is a close question whether the definition of "cocaine base" added as a note to § 2D1.1(c), the Drug Quantity Table, should be considered a guideline or commentary. It is not explicitly labeled as either, *see* USSG § 1B1.7, comment. ("Portions of this document not labeled as guidelines or commentary ... are to be construed as commentary...."), and serves the explanatory purpose normally performed by commentary.

In any event, it makes no difference whether the note is deemed a guideline or commentary, because in either case it was included in the § 994(p) review process. Amendment 487 was part of an overall package of amendments that was transmitted to Congress on May 6, 1993 via a notice whose introductory summary stated: "Pursuant to its authority under section 994(p) of title 28, United States Code, the Commission on April 29, 1993, submitted to the Congress *for review* a report containing *amendments* to the sentencing guidelines, policy statements, and *official commentary* together with reasons for the amendments [emphasis added]." Notices, United States Sentencing Commission, Amendment to the Sentencing Guidelines for United States Courts, 58 Fed.Reg. 27,148 (1993) (emphasis added). Further, *Palacio* evidences unmistakable awareness that the new definition of "cocaine base" was subject to the § 994(p) review process, for the opinion stated that: "The proposed amendment will become effective November 1, 1993, absent action by Congress to the contrary." 4 F.3d at 154.

**4.** The same statutory term, "cocaine base," is used in § 841(b)(1)(A)(iii) and § 960(b)(1)(C). Section 841 is addressed to domestic manufacture and distribution of illegal drugs; Section 960 deals with their importation into the United States, and related manufacture and distribution.

lent)...." *United States v. Moore,* 949 F.2d 68, 71 (2d Cir.1991), *cert. denied,* 503 U.S. 988, 112 S.Ct. 1678, 118 L.Ed.2d 396 (1992). We are consequently bound to follow the ruling in *Palacio* that amendment 487 does not call for revision of the interpretation of § 841(b)(1)(A)(iii) that we rendered in *Jackson I.*

We proceed to consider Jackson's constitutional claims. As to equal protection, Jackson correctly asserts that our ruling in *United States v. Stevens,* 19 F.3d 93, 96–97 (2d Cir.1994), subjected the challenged penalty provisions of § 841(b)(1) only to rational basis review because there was no claim in *Stevens* that their enactment was motivated by intentional discrimination. Jackson accordingly presents the legal and historical arguments in support of the proposition that the enhanced penalties imposed by § 841(b)(1) for cocaine base violations should be subjected to, and invalidated by, strict scrutiny rather than rational basis review because Congress enacted them with discriminatory intent. Since the oral argument of this appeal, however, we have considered and rejected this claim. *See United States v. Moore,* 54 F.3d 92, 96–99 (2d Cir.1995); *see also United States v. Then,* 56 F.3d 464, 466 (2d Cir.1995) (following *Moore* ).[5]

■ Finally, Jackson contends that the sentence imposed upon him violates the Eighth Amendment prohibition against cruel and unusual punishments because the penalty scheme for cocaine base offenses is arbitrary and capricious. This circuit has held in the Fifth Amendment context that the scheme is "rationally related to the legitimate governmental purpose of protecting the public against the greater dangers of crack cocaine." *Stevens,* 19 F.3d at 97. The same reasoning is applicable to Jackson's Eighth Amendment challenge.

Jackson also complains that the enhanced penalties for cocaine base in § 841(b) "allow[ ] for no exception, take[ ] into account no mitigating circumstances, and permit[ ] the judge no discretion whatsoever." However, even mandatory sentences of life imprisonment without the possibility of parole do not violate the Eighth Amendment simply because they are mandatory. *See Harmelin v. Michigan,* 501 U.S. 957, 994–96, 111 S.Ct. 2680, 2701–02, 115 L.Ed.2d 836 (1991) (refusing to extend the requirement under the Eighth Amendment that an individualized determination is required for capital sentences to mandatory sentences of life imprisonment without parole). "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." *Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 1928, 114 L.Ed.2d 524 (1991).

The amended judgment of the district court is accordingly affirmed.

---

**5.** Pursuant to Fed.R.App.P. 28(j), Jackson has submitted a copy of the executive summary of a February 1995 report of the Commission entitled *Cocaine and Federal Sentencing Policy* (the "Report"), which recommends that "Congress revisit the 100–to–1 quantity ratio" and presents evidence in support of "a more appropriate quantity ratio between powder and crack cocaine." Report at ii, xvi. This evidence includes data showing the racially disparate effect of the current sentencing structure. *Id.* at xi–xii. The Report also asserts, however, that:

This [data] does not mean ... that the penalties are racially motivated. Clearly the penalties (both statutory and guideline-based) apply equally to similar defendants regardless of race. Many individual criminal statutes, when enforced, produce a pool of defendants who are not representative of the racial make-up of criminal law violators generally or of society. *However, as all appellate courts have found, there is no evidence that Congress or the Sentencing Commission acted with any discriminatory intent in setting different statutory and guideline penalties for different forms of cocaine.*

*Id.* at xi (emphasis added).