**In re Harley L. RACE, Debtor.**

**Charles WILLISON, Plaintiff,**

v.

**Harley L. RACE, Defendant.**

**Bankruptcy No. 93–40406–2.
Adv. No. 93–4048–2.**

United States Bankruptcy Court,
W.D. Missouri.

Oct. 21, 1993.

Erlene Krigel, Kansas City, MO, for plaintiff.

Michael Tamburini, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for defendant.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This case comes before the Court on Defendant Harley Race's Motion to Dismiss Plaintiff's Complaint to Determine Dischargeability of Debt. A hearing was held on October 13, 1993 to consider Defendant's motion and the Plaintiff's dischargeability complaint. The Court announced its findings and conclusions at the close of the hearing. This Memorandum Opinion memorializes and explains those findings.

### FACTS

On June 9, 1990, the Defendant, Harley Race, was operating a motorboat on the Lake of the Ozarks. The Defendant had been drinking alcohol. The Defendant collided with another motorboat in which the Plaintiff, Charles Willison, and his wife, Brenda Willison, were passengers. Both the Plaintiff and his wife suffered injuries as a result of the accident.

The Plaintiff and his wife filed suit against the Defendant in the Circuit Court of Jackson County, Missouri, case no. CV90–17496. The Plaintiff's personal injury claims were severed from those of his wife whose claims were tried to a jury. On May 15, 1992 the jury returned a verdict in favor of Brenda Willison awarding her $250,000 in compensatory damages. The jury found that the Defendant was negligent in the operation of his motorboat, but was not liable for punitive damages.

Based upon the jury findings in Brenda Willison's action, the parties agreed to a stipulation of facts in the Plaintiff's action on February 18, 1993. The parties stipulated that the Defendant was liable for negligence in the operation of his motorboat and was not liable for punitive damages. The only issue left to be resolved in the state court proceeding was the amount of damages.

On March 5, 1993, the Defendant filed a voluntary chapter 7 petition with this Court staying the state court action. The Defendant listed his debt to the Plaintiff on Schedule F as contingent and unliquidated. Plaintiff filed his dischargeability complaint on April 14, 1993 in which he alleged that the debt was one for injuries sustained by the Defendant's operation of a motor vehicle while intoxicated under 11 U.S.C. § 523(a)(9) (1992). On June 18, 1993, the Court granted a discharge to the debtor on all dischargeable debts. The Defendant filed a motion to dismiss this action under Bankruptcy Rule 7012 on September 13, 1993. A hearing was held on October 13, 1993 at which time the Court heard statements of counsel and legal arguments.

### DISCUSSION

■ This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I) and 28 U.S.C. § 1334. When considering a motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6), the Court must construe the allegations in the complaint in the light most

favorable to the plaintiff. *Patterson v. Von Riesen*, 999 F.2d 1235, 1238 (8th Cir. 1993). *See* Bankr.R. 7012 (incorporating F.R.C.P. Rule 12(b)-(h)).

### A. Section 523(a)(9)

The Plaintiff based his dischargeability complaint on 11 U.S.C. § 523(a)(9) which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
>    *    *    *    *    *    *
>
> (9) for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance....

As a threshold issue, the parties disputed whether § 523(a)(9) applies to the operation of a motorboat or other watercraft while under the influence of alcohol. Since the statute makes no reference to the terms "motorboat" or "watercraft," Plaintiff can prevail only if the term "motor vehicle" includes a motorboat. Congress left the term "motor vehicle" undefined in the statute. *See* 11 U.S.C. § 101. Plaintiff urged a broad construction of the term to include any vehicle operated by a motor including, automobiles, motorcycles, mopeds, motor scooters, airplanes, motorboats, watercraft, and the like. Defendant argued for a narrow construction to include only automobiles.

This is a case of first impression in this Circuit. The Court can find only one reported case to date addressing this issue. *See Williams v. Radivoj*, 111 B.R. 361 (S.D.Fla.1990). In *Williams v. Radivoj*, Judge Scott of the Southern District of Florida affirmed the conclusion of the bankruptcy court that a motorboat was within the definition of "motor vehicle." Judge Scott found that Congress had "intended to give effect to a national public policy against drunk driving" and "was concerned with the consequences of drunk driving, and not the means." *Id.* at 362-63.

Therefore, Judge Scott read "motor vehicle" expansively to give effect to a perceived goal of Congress.

■ While the Court agrees with the sentiments expressed in Judge Scott's *Williams* opinion, the Court's analysis of the law compels a different conclusion. The Court disagrees with *Williams* for two reasons. First, it is a well settled principle that the exceptions to discharge found in § 523 must be narrowly construed against an a objecting creditor and liberally in favor of the debtor. *See, e.g., Perez v. Campbell*, 402 U.S. 637, 638, 91 S.Ct. 1704, 1705, 29 L.Ed.2d 233 (1971); *In re Long*, 774 F.2d 875, 879 (8th Cir.1985); *First State Ins. Co. v. Bryant (In re Bryant)*, 147 B.R. 507, 509 (Bankr.W.D.Mo.1992). Second, *Williams* was decided before a number of recent Supreme Court opinions clearly established that an analysis of the plain meaning of the statute is to be used in construing the Bankruptcy Code. *See, e.g., Pioneer Inv. Serv. Co. v. Brunswick Assocs.*, — U.S. —, — – —, 113 S.Ct. 1489, 1494–95, 123 L.Ed.2d 74 (1993); *Rake v. Wade*, — U.S. —, —, 113 S.Ct. 2187, 2191, 124 L.Ed.2d 424 (1993); *Patterson v. Shumate*, — U.S. —, —, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992); *Toibb v. Radloff*, — U.S. —, —, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991); *United States v. Ron Pair Enter. Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *see also Dewsnup v. Timm*, — U.S. —, —, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992) (J. Scalia dissenting). Using these two interpretive methods, the Court reluctantly finds that a motorboat or watercraft does not fall within the definition of "motor vehicle."

■ The task of resolving the dispute over the meaning of § 523(a)(9) "begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enter. Inc.*, 489 U.S. at 241, 109 S.Ct. at 1030. A court must carefully consider the "natural reading of the phrase," "the grammatical structure of the statute," and "the terminology used throughout the Code." *Id.* at 241–42, 109

S.Ct. at 1030–31. Moreover, the court must find the natural interpretation of the statutory language that "does not conflict with any significant state or federal interest, nor with any other aspect of the Code." *Id.* at 245, 109 S.Ct. at 1033.

■ As stated earlier, § 523(a)(9) does not contain the term "motorboat" or "watercraft," and the term "motor vehicle" is undefined in the Code. *See* 11 U.S.C. § 101. The term "motor vehicle" appears nowhere else in Title 11. The term "motor vehicle" is generally defined as:

an automotive vehicle not operated on rails; esp: one with rubber tires for use on highways.

Webster's Ninth New Collegiate Dictionary 775 (1986). The ordinary, customary usage of the term encompasses only vehicles designed for travel on the highways.

Only when the term "motor vehicle" is broken down into its constituent parts does the term become subject to another interpretation. The term "motor" is an adjective describing "vehicle" and when used as an adjective is defined as:

a: equipped with or driven by a motor b: of, relating to, or involving an automobile c: designed for motor vehicles or motorists.

*Id.* The term "vehicle" is defined as:

a means of carrying or transporting something: CONVEYANCE: as a: MOTOR VEHICLE b: a piece of mechanized equipment.

*Id.* One of the three definitions of "motor" supports the interpretation that a "motor vehicle" is any vehicle with a motor including an automobile, a boat or an airplane. This definition is in fact so expansive that it would include riding lawn mowers, go-carts and electric wheel chairs. The Court does not accept this expansive definition as the natural reading of the term "motor vehicle" because (1) discharge exceptions must be narrowly construed and (2) the normal connotation encompasses only vehicles designed for use on the highways.

When the plain language is clear, the court need go no further in its inquiry. *United States v. Ron Pair Enter. Inc.,* 489

U.S. at 241, 109 S.Ct. at 1030; *see Toibb v. Radloff,* —— U.S. at ——, 111 S.Ct. at 2199. The conclusion that the natural reading of the term "motor vehicle" includes only vehicles designed for use on the highways is dispositive. However, in light of *Williams,* the Court believes that further discussion would be helpful.

The Court's decision is consonant with the legislative history of § 523(a)(9), other federal statutes, and state law. When originally enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, the section had virtually no reported legislative history. *In re Ganzer,* 54 B.R. 75, 76 (Bankr.D.Minn.1985). The section was amended in 1990 by the Criminal Victims Protection Act of 1990, Pub.L. 101–581. Looking at Congressional discussion of the Criminal Victims Protection Act, it seems clear that the intent of the legislature was to deter alcohol related *highway* fatalities. The discussion begins:

In 1988 there were 23,352 alcohol-related highway fatalities in this country. A drunk driving crash in which an innocent victim is injured or killed is a tragedy.

S.Rep. No. 101–434, 101st Cong. 2nd Sess. 3 (1990) U.S.Code Cong. & Admin.News pp. 4065, 4066. The entire discussion is framed within the context of drunken automobile drivers. Also, the statements of Senator Danforth, who introduced the § 523(a)(9) into the Judgeship Act of 1984, were framed in the same context, the drunk driving of automobiles:

Imagine the ... child [who] has been killed or permanently disabled by some fellow weaving down the road.... Now those who drink too much are not in any condition to operate an automobile, and they know that by choosing to drive they are endangering other people on the road.... Americans are beginning to realize that they don't have to put up with drunkenness on the highways.

129 Cong.Rec. S1622 (daily ed. February 24, 1983) (Statement of Senator Danforth). There is no reference in the legislative history to motorboats, watercraft, airplanes or any other craft, only automobiles. Thus,

there is nothing in the legislative history to suggest Congress intended "motor vehicle" to mean anything other than its customary definition.

The Court's construction of "motor vehicle" is also consonant with Congressional use of the term in other statutes. In the National Traffic and Motor Vehicle Safety Act of 1966, as amended, Congress defined "motor vehicle" as:

any vehicle driven or drawn by mechanical power manufactured primarily for use on the public streets, roads and highways, except any vehicle operated exclusively on a rail or rails.

15 U.S.C. §§ 1391(3) and 1901(15) (1992). Similarly, in the Roberts Act, Congress defined "motor vehicle" as:

any vehicle, self propelled or drawn by mechanical power, designed for use on the highways principally for the transportation of passengers except any vehicle designed or used for military field training, combat, or tactical purposes.

40 U.S.C. § 703(1) (1992). Congress has expressly defined the term "motor vehicle" in other contexts giving it its ordinary, customary meaning. Had Congress intended for the term to mean something else, Congress could have drafted additional or different language. But, they did not.

■ Finally, the Court's reading of "motor vehicle" is in accord with Missouri state law. The interpretation of the Bankruptcy Code is a matter of federal law, and the Court is not bound by the labels a state may choose to attach to its legislation. *In re Mount Moriah Elevator, Inc.*, 143 B.R. 905, 910 (Bankr.W.D.Mo.1992); *see In re Williams*, 703 F.2d 1055, 1057 (8th Cir. 1983). Missouri law does not control. However, the Supreme Court stated that the natural interpretation of the statutory language should not conflict with any "significant *state* or federal interest" (emphasis added). *United States v. Ron Pair Enter. Inc.*, 489 U.S. at 245, 109 S.Ct. at 1033. Thus, it is appropriate to analyze state law as persuasive authority.

■ Title XIX of the Missouri statutory code ("Motor Vehicles, Watercraft and Avi-

ation") assigns separate Chapters for the regulation of motor vehicles and watercraft. See Chapter 303 ("Motor Vehicle Safety Responsibility Law") and Chapter 306 ("Watercraft Regulation"). Under Missouri law, "motor vehicle" is defined as:

a self-propelled vehicle which is designed for use upon a highway, including trailers designed for use with such vehicles (except traction engines, road rollers, farm tractors, tractor cranes, power shovels and well drillers), and every vehicle which is propelled by electric power obtained from overhead wires but not operated upon rails.

V.A.M.S. § 303.020 (1993). Whereas, Missouri separately defines "motorboat" as:

any vessel propelled by machinery having a rating of more than seven and one-half horsepower, whether or not such machinery is a principal source of propulsion.

V.A.M.S. § 306.010 (1993). Missouri recognizes a distinction between "motor vehicles" and "watercraft," and gives the term "motor vehicle" its ordinary, customary meaning.

Parenthetically, it seems Judge Scott in the *Williams* case was faced with a similar distinction under Florida law. *See Williams v. Radivoj*, 111 B.R. at 363. Judge Scott noted that because Florida had specifically passed drunk driving legislation for "vessels," the defendant could "find no safe harbor" under state law. *Id.* Unfortunately, Judge Scott missed the boat. The point of Florida passing a drunk driving law to cover "vessels" is not that the conduct was legal or illegal under Florida law; rather, Florida law recognized a distinction between "motor vehicles" and "vessels" such that any drunk driving laws intended to affect "vessels" must specifically include language to that effect.

The legislative history of 11 U.S.C. § 523(a)(9), federal law and state law all support the definition adopted by the Court. The term "motor vehicle" does not include a motorboat. The effect of this conclusion on the Plaintiff is unfortunate. The Defendant clearly injured the Plaintiff by his drunken cruise. Had Congress

thought of it, it probably would have included motorboats within § 523(a)(9). The fact that Congress through its inadvertence or lack of foresight did not include language to cover the present facts does not give this Court the authority to right that wrong. It is Congress' role to legislate, not the Court's. Should Congress desire to exclude from discharge debts arising from injuries caused by a defendant's operation of a motorboat while intoxicated, it may amend the statute.

### B. Section 523(a)(6)

■ The Plaintiff moved to amend his complaint on October 7, 1993, to include a dischargeability complaint under 11 U.S.C. 523(a)(6). The Court granted Plaintiff's motion to amend on October 8th, and the Plaintiff filed his amended complaint on October 12th. At the hearing, Plaintiff waived his § 523(a)(6) arguments. In light of the Eighth Circuit's ruling in *Cassidy v. Minihan*, 794 F.2d 340 (8th Cir.1986), the Court believes that it was wise for the Plaintiff to waive that argument. The *Cassidy* court concluded that § 523(a)(6), which bars the discharge of debts for "willful and malicious injury," does not apply to injuries resulting from the operation of an automobile under the influence of alcohol. *Id.* at 341. The court concluded that the section only bars discharge to "debts arising from intentionally inflicted injuries." *Id.* As with the operation of an automobile under the influence, the operation of a motorboat under the influence lacks the requisite intent to bring the claim within the purview of § 523(a)(6).

### CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss Plaintiff's Complaint to Determine Dischargeability is hereby GRANTED.

This Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052.

SO ORDERED.