**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Jose Domingo MUNOZ–REALPE,**
**Defendant–Appellee.**

No. 92–4039.

United States Court of Appeals,
Eleventh Circuit.

May 5, 1994.

Raymond A. Pierson, Harriett Galvin, Dawn Bowen, Linda Collins Hertz, Asst. U.S. Attys., Miami, FL, for appellant.

Laurence S. Katz, Coconut Grove, FL, Mark King Leban, Miami, FL, for appellee.

Before ANDERSON and EDMONDSON, Circuit Judges, and DYER, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Jose Munoz–Realpe pleaded guilty to importation of cocaine, in violation of 21 U.S.C. § 952(a), and was sentenced to 36 months imprisonment, to be followed by five years supervised release.[1] On appeal, the United States raises three issues, challenging the sentence imposed on Munoz–Realpe: (1) that the district court erred by sentencing Munoz–Realpe under the penalty provisions for cocaine hydrochloride rather than those for cocaine base; (2) that the district court improperly departed downward based upon a combination of Munoz–Realpe's diminished capacity and substantial assistance to the government; and (3) that the district court's finding that Munoz–Realpe was a minor participant in the crime was erroneous. For the reasons that follow, we affirm in part and vacate in part and remand.

## I. COCAINE BASE

Munoz–Realpe was arrested at Miami International Airport with six liquor bottles containing a liquid that tested positive for cocaine base. After the cocaine was extracted from the liquid, 773.4 grams of cocaine base remained. At sentencing, Munoz–Realpe argued that the substance he had imported was "cocaine base in liquid form," which could not be used without further processing and therefore should be treated for sentencing purposes as cocaine hydrochloride. The district court agreed, following *United States v. Vistoli–Ferroni*, 783 F.Supp. 1366 (S.D.Fla.1991).[2] This court subsequent-

---

**1.** The district court concluded that Munoz–Realpe's base offense level was 26. The court then departed downward two levels for acceptance of responsibility, two levels for diminished capacity, and two levels for Munoz–Realpe's mi-nor role in the offense, arriving at offense level 20. The applicable sentencing range was 33–41 months.

**2.** In *Vistoli–Ferroni*, the court held that Congress did not intend that the stiff penalties in force for

ly held in *United States v. Rodriguez*, 980 F.2d 1375 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3003, 125 L.Ed.2d 695 (1993), that the term "cocaine base" as used in 21 U.S.C. § 960(b) and U.S.S.G. § 2D1.1 is not limited to crack cocaine, but includes all forms of cocaine base according to the scientific meaning of the term.[3] The government initially argued that this court was bound by *Rodriguez* and therefore must vacate and remand the case for resentencing. However, effective November 1, 1993, U.S.S.G. § 2D1.1(c) was amended to include the following after the drug quantity table:

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

In explaining the amendment, the Sentencing Commission noted that it was addressing an inter-circuit conflict. While some circuits had held that "cocaine base" means only "crack," *United States v. Shaw*, 936 F.2d 412 (9th Cir.1991); others (including this court in *Rodriguez* ) held that "cocaine base" has a scientific, chemical definition that is more inclusive than crack, *see, e.g., United States v. Jackson*, 968 F.2d 158 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992). Under this amendment, forms of cocaine base other than crack are treated as cocaine hydrochloride. United States Sentencing Commission, Amendments to the Sentencing Guidelines for United States Courts, 58 Fed.Reg. 27,148, 27,156 (1993).

Section 2D1.1(c) of the Sentencing Guidelines, as amended, makes clear that under the Sentencing Guidelines the substance Munoz–Realpe was convicted of importing must be treated as cocaine hydrochloride, rather than cocaine base. In light of the amended Guideline definition of cocaine base—which is consistent with the definition employed by the district court in this case—we reject the government's challenge on this issue.[4]

■ The government argues that even after the amendment of Section 2D1.1, Munoz–Realpe is still subject to a ten-year mandatory minimum sentence under 21 U.S.C. § 960(b).[5] The government contends that *Rodriguez* is still binding precedent to the extent that it holds that the definition of "cocaine base" in Section 960(b) includes all forms of cocaine base, rather than only crack cocaine. *Rodriguez*, 980 F.2d at 1377. We disagree. We believe that the precedential force of our *Rodriguez* ruling has been eroded by subsequent Congressional action. When the Sentencing Commission proposes an amendment to the Guidelines themselves (as opposed to commentary or other explanatory matter), the amendment is first submitted to Congress, which may act to disapprove or change the proposed amendment within a specified time (at least 180 days). 28 U.S.C. § 994(p). If Congress takes no action, the amendment becomes effective. *Id.* By allowing the amendment to take effect, Congress has given its imprimatur to the new definition of "cocaine base"; Congress indicated that it intends the term "cocaine base" to include only crack cocaine. Because Congress has provided this new definition, we

---

crack cocaine be applied to cocaine base in liquid form, which could not be used without further processing and could be processed into cocaine hydrochloride as easily as crack cocaine.

3. The base offense level for a crime involving 773.4 grams of cocaine base would be 36.

4. We need not decide whether the amended Guideline definition of cocaine base is retroactive. In this case, a successful appeal by the government on this issue would require resentencing, and under these circumstances we think it is clear any such resentencing should employ the now effective lenient definition of cocaine base. *United States v. Wilson*, 993 F.2d 214, 216

(11th Cir.1993) (the version of the Guidelines in effect on the date of sentencing is applied); *United States v. Cherry*, 10 F.3d 1003, 1014–15 (3d Cir.1993) (on resentencing, the district court is to use the Guidelines in effect at the time of resentencing). Thus, we need not address the retroactivity issue left open in *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1920, 123 L.Ed.2d 598 (1993).

5. 21 U.S.C. § 960(b) provides that a person convicted of importing 50 grams or more of a mixture or substance containing cocaine base shall be subject to a mandatory minimum sentence of 10 years. The statute does not define the term "cocaine base."

think it is proper for us to look to the Guidelines in determining the meaning of "cocaine base" in the mandatory minimum statute, especially since both provisions seek to address the same problem. *See, e.g., United States v. American Bldg. Maintenance Indus.*, 422 U.S. 271, 277, 95 S.Ct. 2150, 2155, 45 L.Ed.2d 177 (1975) (looking to the Federal Trade Commission Act to define a term used in the Clayton Act, in part because both statutes were designed to deal with closely related aspects of the same problem); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755–56, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979) (looking to Title VII of the Civil Rights Act of 1964 in determining the meaning of a provision of the Age Discrimination in Employment Act of 1967, in part because they shared a common purpose and the language was almost exactly the same); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987) (looking to 28 U.S.C. § 1920 to define the term "costs" as used in Fed.R.Civ.P. 54(d)); *In re Race*, 159 B.R. 857, 861 (Bankr. W.D.Mo.1993) (looking to Congress' use of the term "motor vehicle" in other statutes in determining the term's meaning as used in 11 U.S.C. § 523(a)(9)); *cf. United States v. Rodriguez*, 980 F.2d at 1378 (noting that terms used in both mandatory minimum statutes and Sentencing Guidelines are construed as consistent with each other). There is no reason for us to assume that Congress meant for "cocaine base" to have more than one definition.

■ We recognize that our holding is contrary to a recent decision of the Second Circuit. As this court did in *Rodriguez*, the Second Circuit (prior to the amendment to Guideline § 2D1.1(c)) held that "cocaine base" had a chemical meaning not limited to "crack." *United States v. Jackson, supra.* In the post-amendment case of *United States v. Palacio*, 4 F.3d 150 (2nd Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1194, 127 L.Ed.2d 543 (1994), the court recognized that it would be bound by the narrower definition in applying the Guidelines, but held that the broad definition previously adopted in *Jackson* remained valid for the mandatory minimum statute, declining to reinterpret the meaning of the term "in the absence of new guidance from Congress." *Palacio*, 4 F.3d at 154. We respectfully disagree with the major premise that the Second Circuit's holding is based upon: that the amendment was to commentary rather than the Guidelines themselves. It is clear that the amendment is an amendment to the Guidelines, not merely to the commentary. In light of this, we also respectfully disagree with the suggestion in *Palacio* that Congress has not provided guidance by approving the amendment. *See* 28 U.S.C. § 994(p) (outlining the process by which Congress reviews proposed amendments to the Guidelines); *United States v. Stinson*, 957 F.2d 813, 815 (11th Cir.1992) (noting that Guideline amendments are scrutinized by Congress, which can "revoke or amend any or all of the Guidelines"), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). *Palacio* equates the amendment with an agency's view of a statute's meaning that conflicts with a prior independent judicial interpretation of the statute. *Palacio*, 4 F.3d at 154–55. However, as we have explained, the amendment to the Guidelines is more than a mere agency interpretation; it has received the approval of Congress.[6]

---

**6.** The *Palacio* court noted that the Sentencing Commission's interpretation of the substantive meaning of a statute was not likely to be entitled to deference, citing *Smith v. United States*, —— U.S. ——, ——, 113 S.Ct. 2050, 2055, 124 L.Ed.2d 138 (1993). Of course, we do not suggest deference to the Sentencing Commission is appropriate in this case; rather, we suggest that Congress has approved a particular definition of cocaine base in one context, which has persuasive force as to Congress' intended definition of the same term in a similar context. Moreover, we do not believe that the passing phrase in *Smith*—"the dubious assumption that the Sentencing Guidelines are relevant in the present context," *id.*—casts doubt on our analysis. In using that phrase, the *Smith* majority was responding to an argument made by the dissent that "use," in the context of a statute enhancing the penalty for a drug trafficking crime if a firearm was used in connection with the crime, should be interpreted as "use as a weapon." In support of this construction, the dissent referred to, *inter alia*, a provision of the Sentencing Guidelines and accompanying commentary. *Smith*, —— U.S. at ——, 113 S.Ct. at 2061 (Scalia, J., dissenting). The majority's response, doubting that the Guidelines were relevant "in the present context," pointed out that the Guidelines

For the foregoing reasons, we reject the government's challenge to the district court's interpretation of "cocaine base."

## II. DOWNWARD DEPARTURE: DIMINISHED CAPACITY AND SUBSTANTIAL ASSISTANCE

■ The government next argues that the district court improperly departed downward based on a combination of Munoz–Realpe's diminished capacity and substantial assistance to the government. The district court awarded Munoz–Realpe a two-level reduction for diminished capacity pursuant to U.S.S.G. § 5K2.13, making the following finding:

It occurs to me that although he had the capacity to be a mule and carry this material into the country, the diminished capacity certainly affected his ability to walk away scott [sic] free because if he had been smarter, he would have been able to trap the recipient of this and the co-conspirators by helping the government do that.

He did what he could do and I so find that he wore a time recording device or monitor. He went out and did his best. I have no evidence to the contrary in this matter ... It seems to me that he rendered what assistance he could render and that his assistance was substantial and that had he had a greater capacity he would have caught the next guy.

set up a hierarchy of relative culpability based on the manner in which a firearm was used, whereas the enhancement statute dealt with a different context: the use of a firearm in relation to a crime of violence or a drug trafficking crime. In addition, the majority's statement clearly was dicta; the Court did not hold that the Guidelines never are relevant in defining a statutory term. Finally, in none of the contexts was "use of a firearm" as clearly and unambiguously defined as "cocaine base" is in the amended Guideline § 2D1.1(c).

We also note that the Supreme Court has stated that "the Guidelines are the equivalent of legislative rules adopted by federal agencies." *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993). Again, however, this passage cannot be read in isolation. *Stinson* addressed the weight to be given to Guideline commentary; the Court analogized the commentary to an agency's interpretation of its own legislative rules. *Id.* In making this analogy, the Guidelines themselves were equated with legislative rules adopted by agencies. However, the Court specifically noted that

So it seems to me that it is a mixture of things, that the diminished capacity did have an effect on his ultimate liability.

U.S.S.G. § 5K2.13 provides for a downward departure based on diminished capacity "to reflect the extent to which reduced mental capacity contributed to the commission of the offense." It does not authorize a court to depart downward because a defendant did not have the mental capacity to render substantial assistance to the government.[7] Thus, to the extent that the district court in this case departed downward under § 5K2.13 based on Munoz–Realpe's inability to render substantial assistance, it erred.

■ Munoz–Realpe argues that the district court was also authorized to depart downward based on § 5K2.0, the "catch-all" departure provision.[8] We disagree. In *United States v. Chotas*, 968 F.2d 1193 (11th Cir.1992), this court rejected the argument that behavior not qualifying as substantial assistance under § 5K1.1 could still justify a departure under § 5K2.0. The court stated:

A sentencing court is not free to ignore a requirement for a particular adjustment under the guidelines: "[i]f the Commission *did* adequately consider a certain aggravating or mitigating circumstance, departure must be in accordance with the Commission's directive." ... *A fortiori*, a sentenc-

"the analogy is not precise because Congress has a role in promulgating guidelines." *Id.* —— U.S. at ——, 113 S.Ct. at 1918. It is exactly this congressional role that is significant in the present case.

7. In *Wade v. United States*, —— U.S. ——, ——— ———, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992), the Supreme Court held that a sentencing court may not depart downward pursuant to U.S.S.G. § 5K1.1 for substantial assistance without a government motion, unless the court finds that the government's refusal to file such a motion was based on an unconstitutional motive.

8. Section 5K2.0 provides:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

ing court may not simply circumvent that directive by departing under a separate guideline for the same mitigating circumstance.

*Id.* at 1196 (citations omitted). The Sentencing Commission has set forth guidelines governing downward departures for both substantial assistance and diminished capacity. This case is similar to *Chotas.* In this case, the Guidelines consider diminished capacity, but limit its relevance to the effect on the defendant's commission of the offense. Guidelines § 5K2.13 does not authorize consideration of the effect of a defendant's diminished capacity on his ability to provide substantial assistance. Thus, under the *Chotas* rationale, the reasons given by the district court—*i.e.,* diminished capacity affecting substantial assistance—cannot support a downward departure under § 5K2.0. Of course, Munoz–Realpe did not qualify for the substantial assistance departure because the government did not so move. We conclude that the district court was not authorized to combine diminished capacity and substantial assistance to justify a downward departure under § 5K2.0.[9]

We vacate this portion of Munoz–Realpe's sentence and remand the case for a determination whether Munoz–Realpe's mental incapacity contributed to the commission of his offense to such a degree as to justify a downward departure pursuant to § 5K2.13. On remand, the district court is directed to evaluate Munoz–Realpe's diminished capacity only as it relates to the commission of his offense.

### III. MINOR ROLE

■ Finally, the government argues that the district court's finding that Munoz–Realpe was entitled to a two level reduction because of his minor role in the offense was error. This is a factual determination, subject to the clearly erroneous standard of review. We conclude that the district court did not clearly err, and thus we reject the government's challenge in this regard.

9. Munoz–Realpe's argument that the Guidelines at issue are unconstitutional is without merit and

For the foregoing reasons, we reject the government's challenges concerning cocaine base and minor role, but we sustain the government's challenge to the downward departure based upon a combination of diminished capacity and substantial assistance. Accordingly, the judgment of the district court is affirmed in part, vacated in part, and remanded.

AFFIRMED in Part, VACATED in Part, and REMANDED.

warrants no discussion.