**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 95-5914

JAMES ANTHONY WALKER, a/k/a Jay,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                                           No. 96-4110

DERRICK ANTHONY JOHNSON, a/k/a
Derek David,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                                           No. 96-4247

DUALA CHAPPELL, a/k/a Douglas
McKane,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Charlottesville.
Samuel G. Wilson, Chief District Judge.
(CR-95-17)

Nos. 95-5914 and 96-4247 Argued: April 10, 1997
No. 96-4110 Submitted: April 2, 1997

Decided: June 30, 1997

Before WILKINS and MICHAEL, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished opinion. Senior Judge Butzner wrote the
opinion, in which Judge Wilkins and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Denise Yvette Lunsford, MICHIE, HAMLETT,
LOWRY, RASMUSSEN & TWEEL, P.C., Charlottesville, Virginia,
for Appellant Chappell; Margaret McLeod Cain, Charlottesville, Vir-
ginia, for Appellant Walker. Ray B. Fitzgerald, Jr., Assistant United
States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:**
Paul Robert Byers, Aurora, Indiana, for Appellant Johnson. Robert P.
Crouch, Jr., United States Attorney, Cynthia Micklem, Third-Year
Practice Intern, Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

BUTZNER, Senior Circuit Judge:

James Walker, Derrick Johnson, and Duala Chappell appeal judg-
ments convicting them of conspiracy to possess with the intent to dis-
tribute "cocaine base, a/k/a `crack,'" and possession with the intent to
distribute "cocaine base or a mixture or substance containing cocaine
base (also known as `crack')" in violation of 21 U.S.C. § 846 and
§ 841(a)(1). We affirm.

I

On November 9, 1994, Johnson, Chappell, and a codefendant were
indicted on charges of possession with intent to distribute cocaine

2

base. They remained in jail until their trial on October 16, 1995. On January 31, 1995, Walker was arrested for possession with the intent to distribute cocaine base.

An investigation by the Drug Enforcement Agency uncovered evidence that all three appellants were involved in a larger conspiracy to transport cocaine from New York to Charlottesville, Virginia, for distribution. On March 9, 1995, Walker, Johnson, Chappell, and six others were charged in a superseding sealed indictment. The indictment charged Walker, Johnson, Chappell, and four others for their participation in the conspiracy, which was alleged to have continued from the spring of 1994 until March 1995. The other two defendants were indicted for separate crimes. The indictment also incorporated the possession charge for which Johnson and Chappell were initially indicted. Walker and Chappell faced additional possession charges stemming from two separate acts of drug trafficking. The original indictment against Johnson and Chappell was dismissed on March 13, 1995.

Walker, Johnson, and Chappell were convicted as charged and sentenced to prison. Each defendant raises several issues on appeal. Because this appeal involves multiple parties and factually distinct issues, we will set forth the background facts pertaining to each legal issue in turn.

II

On October 9, 1994, an Albemarle County, Virginia, police officer stopped Johnson for a traffic violation. Chappell was a passenger in the car. The officer noticed that Johnson's driver's license was suspended and ordered the car to be impounded. Fifteen minutes later, however, he saw the car, which was supposed to be impounded, parked at a nearby motel. Later that morning the officer received information from an FBI database that the name "Derrick Johnson" was an alias used by a suspected drug dealer named "Derrick David." Derrick David was actually the alias for Johnson, but the officer was unaware of the database error and obtained an arrest warrant for Johnson on false identification charges. The police returned to the motel where Johnson had been spotted to arrest him. They found Johnson's car unlocked with the windows rolled down, and a slip of paper

resembling a traffic summons was on the seat. One of the officers reached inside the car and picked up the piece of paper which turned out to be a receipt bearing the name "Kawan Palmer." A motel clerk told the officers that several young males and a female had gone into room 35. The clerk said that room 35 was registered to Kawan Palmer.

Before the officers entered room 35, they heard a toilet flush and a window open. The officers found only Johnson, Chappell, and Lamont Teele in the room. There was no sign of Kawan Palmer or a female. The officers made a brief protective sweep of the room and the bathroom. The bathroom window was open and an officer observed a large quantity of crack cocaine on a trash bin below. Johnson and Chappell were arrested on state drug trafficking charges. A federal grand jury indicted them on November 9, 1994.

Johnson and Chappell claim that the district court erred in denying their motion to suppress the evidence seized from Johnson's car and the motel room. They claim that the officer violated the Fourth Amendment when he reached through the open window of Johnson's car and picked up what he thought was the traffic summons he had issued to Johnson earlier. Johnson and Chappell claim that without this piece of paper the police would have never located them, arrested them, or seized physical evidence from the motel room. They also challenge the scope of the officers' protective sweep of the motel room.

The district court found that the searches and seizures relating to the arrest did not violate the Fourth Amendment. Briefly, the district court held that, although the FBI database was inaccurate, the warrant issued by a magistrate was sufficient under the good faith doctrine explained in United States v. Leon, 468 U.S. 897 (1984), to validate the search and seizure. The district court also held that the officer who retrieved the paper from Johnson's car was lawfully in the rear of the motel where the car was parked, that the car had been ordered impounded, and Johnson--for whom an arrest warrant had been issued--was seen walking away from it. These facts justified the limited search of the car. The information supplied by the motel clerk together with the arrest warrant authorized the entry into the motel room. Finally, the district court reasoned that the physical evidence

4

ultimately recovered also was admissible under the doctrine of "inevitable discovery." Nix v. Williams, 467 U.S. 431, 445-48 (1984). The district court excluded all statements the defendants made between 9 a.m. and 4 p.m. on October 9, 1994. We affirm the decision of the district court for the reasons adequately stated in its seven-page, written opinion.

III

All three appellants claim that they were denied their right to a speedy trial under both the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and the Sixth Amendment. The district court denied the appellants' motion to dismiss for want of a speedy trial on two separate occasions. We review the district court's legal conclusions regarding the alleged speedy trial violations de novo. United States v. Stoudenmire, 74 F.3d 60, 63 (4th Cir. 1996).

Section 3161(c)(1) of the Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

Johnson, Chappell, and codefendant Lamont Teele were held in state custody from the date of arrest, October 9, 1994, until they made their initial appearances before a federal magistrate on October 26, 1994. All three defendants were indicted on November 9, 1994. Thus, the speedy trial clock for Johnson and Chappell initially commenced on November 10, 1994. § 3161(c)(1); see Stoudenmire, 74 F.3d at 63.

The clock ran 18 days before Johnson filed a motion to suppress evidence on November 28, 1994. This stopped the clock until a hearing was held on February 28, 1995. 18 U.S.C. § 3161(h)(1)(F). The clock remained stopped for an additional 30 days after the hearing while the motion was under advisement of the court. 18 U.S.C.

5

§ 3161(h)(1)(J); <u>United States v. Parker</u>, 30 F.3d 542, 546 (4th Cir. 1994).

On March 9, 1995, while Johnson's motion was under advisement, the government filed a sealed superseding indictment against Johnson, Chappell, and Teele. The indictment joined the three defendants with six new codefendants, including Walker. When a defendant is joined in an indictment with codefendants for whom the speedy trial clock has not run and no motion for severance has been granted, § 3161(h)(7) allows for "a reasonable period of delay." This provision applies to codefendants who were indicted with or after the defendant. S.Rep. No. 93-1021, 93d Cong., p. 38 (1974). In <u>United States v. Piteo</u>, the Second Circuit explained the effect of § 3161(h)(7) as follows:

> [I]n cases involving multiple defendants only one speedy trial clock, beginning on the date of the commencement of the speedy trial clock of the most recently added defendant, need be calculated under 18 U.S.C. § 3161(h)(7). In this computation, a delay attributable to any one defendant is chargeable only to the single controlling clock. So long as the defendants in question are brought to trial within the seventy speedy trial days that began with the clock of the most recently added defendant and so long as any delay is "reasonable," the Speedy Trial Act is not violated.

726 F.2d 50, 52 (1984) (citations omitted); <u>accord Henderson v. United States</u>, 476 U.S. 321, 323 n. 2. Commenting on § 3161(h)(7), another authority has observed: "In effect, the latest deadline for any joined defendants becomes the deadline for all." Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, <u>Guidelines to the Administration of the Speedy Trial Act of 1974</u>, as Amended (Dec. 1979 rev., with amendments through Oct. 1984), 106 F.R.D. 271, 298 (1984).

Pursuant to § 3161(h)(7), the joinder of additional defendants in the superseding indictment effectively started a "single controlling clock" that would measure the speedy trial time of all codefendants, including Johnson and Chappell. The superseding indictment was unsealed on June 7, 1995, but Walker, the most recently added codefendant

6

who was not subsequently severed, did not make his initial appearance until June 8, 1995. Consequently, the "single controlling clock" did not begin to run for Johnson, Chappell, and Walker until June 9, 1995. § 3161(c)(1); Piteo, 726 F.2d at 52.

The clock ran for 36 days before Johnson filed various motions, including a motion to dismiss for violation of the Speedy Trial Act on July 14, 1995. The motion was denied at a hearing on September, 21, 1995. This time was excludable because a motion alleging a speedy trial violation is excludable just as any other motion. Stoudenmire, 74 F.3d at 63.

Section 3161(h)(8)(A) excludes time for continuances granted by the court provided the court finds that the continuance is in the best interests of justice. While the speedy trial motion was pending, the defendants also moved to continue the trial, which was scheduled for August 7, 1995. The court granted the continuance, finding it to be in the best interests of justice, and rescheduled the trial for October 16, 1995. Thus, from July 14, 1995, until October 16, 1995, the date of trial, no additional time elapsed on the speedy trial clock.

Applying the exclusions to Johnson, Chappell, and Walker as permitted by § 3161(h)(7), we conclude that only 36 days elapsed on the speedy trial clock.

IV

The appellants also claim that they were denied a speedy trial under the Sixth Amendment. In assessing such a claim, we consider the length of the delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972).

Johnson and Chappell were in jail for over a year prior to trial, and Walker was in jail for just over nine months. This was a lengthy pretrial delay during which the appellants asserted their rights to a speedy trial. But it was the appellants' own pretrial motions which caused much of the delay. Johnson and Chappell had their trial continued twice, which constituted a four and a half month delay. Walker

7

had his trial continued for over two months. The defendants also filed an assortment of pretrial motions. The additional delay caused by the superseding indictment and the addition of codefendants was reasonable given the government's interest in prosecuting all the indicted defendants in a single trial. Accordingly, we find no Sixth Amendment violation.

V

Johnson and Walker claim that the district court erred in denying their midtrial requests for substitution of counsel. We review such claims for abuse of discretion. United States v. Gallop, 838 F.2d 105, 108 (4th Cir. 1988).

To determine whether the district court abused its discretion in denying the motion, we consider (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the defendant's allegations, and (3) whether there was a total communication breakdown between the attorney and defendant that prevented an adequate defense. Id.

Walker and Johnson's motions were made the second day of trial, though Walker's counsel admitted that he should have made the motion on the first day of trial. In any case, neither motion was timely when balanced against the court's interest in the firm management of its docket and the fact that the case had already been continued twice. United States v. Mullen, 32 F.3d 891, 895-96 (4th Cir. 1994). Walker and Johnson cite Mullen to support the timeliness of their motion. In Mullen, however, the motion to substitute counsel was filed 33 days prior to trial. Walker argues that he alerted the court to his complaints before trial in a letter sent to the judge. The judge, however, stated that he saw nothing to justify substitution of counsel.

The district court adequately inquired into Walker's complaints that his counsel did not file all the motions he requested, did not discuss possible witnesses, and did not spend enough time to prepare for his case. The judge asked Walker which witnesses he wished to subpoena for trial, but Walker could not name any. The court explained to Walker that his counsel was not required to file every motion that Walker wanted to bring. Walker's allegations that his counsel did not attend two motions hearings was never raised in the district court, so

8

the court had no obligation to inquire into such allegations. Despite Walker's complaints, the docket entries indicate that Walker filed or joined in at least eight pretrial motions. Walker also told the judge that his counsel had no time to prepare for his case because he was immersed in a death penalty case in North Carolina. Walker's counsel had previously made a motion to sever on this ground less than a week before trial, but it was denied. The judge concluded that he had "continued the case on a couple of occasions to be sure that [counsel] had time to prepare, and there's been no indication that he didn't take the opportunity to prepare in light of continuance .. . that I gave him." The court was within its discretion to reject the allegations raised by Walker as a basis for substituting counsel.

There is no evidence that there was such a breakdown of communication between Walker and his counsel so as to preclude adequate representation. The court told Walker:

> I still haven't heard anything that leads me to believe that he's taken any action, or failed to take action in any way that's prejudicial to you receiving a fair trial. I just haven't heard it. I just heard that you disagree with what it is that he's done, and the disagreement is simply insufficient to raise any problem of ineffective assistance.

Walker admits that he met with his counsel once in August and twice in September. Walker and his counsel worked together through the trial and sentencing phase, including preparing objections to the presentence report. Evidence of cooperation and communications between counsel and client demonstrates that the court acted properly in not removing counsel. Cf. United States v. Hanley, 974 F.2d 14, 17 (4th Cir. 1992). There was no error in the judge refusing to grant Walker's motion to substitute counsel.

Similarly, the court did not abuse its discretion in denying Johnson's motion to substitute counsel. The only allegations that Johnson raised at trial were that his counsel was "not winning" any motions, that his counsel told him that he "[was] not O.J.," and that he "[was] not in L.A." so he wasn't going to win. The judge told Johnson that these allegations were insufficient because they only prove that his lawyer was giving him candid advice. On appeal, Johnson submits

9

additional allegations against his counsel, but these allegations were never brought to the attention of the district court. The judge properly dismissed the motion.

The heart of both Walker and Johnson's claims relate to ineffective assistance of counsel. Walker has raised a contention that his counsel failed to devote enough time and energy into preparing his case in light of his ongoing death penalty case. In his motion for severance, Walker's counsel admitted that he was "simply well short of being able to complete the work necessary to be ready for trial on October 16, 1995." Walker also alleges on appeal that his counsel's failure to attend two motions hearings deprived him of his right to counsel under the Sixth Amendment. These allegations did not warrant a midtrial substitution of counsel in a case that had been twice continued on the appellants' motion. Walker and Johnson, however, may pursue their claims of ineffective representation on a more complete record, if they be so advised, in a § 2255 collateral proceeding. See Hanley, 974 F.2d at 16-17 n.2 (4th Cir. 1992).

VI

All three appellants claim that the evidence was insufficient to support their convictions. Viewing the evidence in the light most favorable to the government, we consider whether any rational trier of fact could have found the appellants guilty beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942). Walker, Johnson, and Chappell were indicted for conspiracy along with Lamont Teele, Wesla Hughes, Kawan Palmer, and Shaheen Richardson. Walker, Johnson, and Chappell were found guilty; Hughes and Kawan Palmer pled guilty; Richardson was severed and pled guilty on a separate possession charge; Teele was acquitted. Leslie Mills and Gwendolyn Palmer pled guilty on possession charges relating to the conspiracy. The evidence disclosed that Kawan Palmer was the leader of the conspiracy and that Walker, Johnson, and Chappell worked in concert with their codefendants to either transport cocaine from New York or distribute it in Charlottesville.

Three witnesses testified to Walker's role in the conspiracy. Gwen Palmer, Kawan Palmer's mother who lived in New York, testified that on two separate occasions she transported packages of cocaine

10

from New York to Charlottesville for Walker by bus. The second time she carried the cocaine package for Walker, she was arrested at the bus station where Walker and Hughes were awaiting her arrival. Hughes testified that she had seen Walker with cocaine he planned to distribute through street dealers in Charlottesville. Another witness testified that he had purchased cocaine from Walker in Charlottesville on as many as four occasions and that he had seen Walker with large quantities of cocaine intended for other purchasers. A police officer recovered a large quantity of crack in a car that Walker was driving to Charlottesville. This evidence was sufficient to show that Walker was a knowing participant in the conspiracy as both a supplier and a distributer.

The evidence against Johnson and Chappell was also sufficient. Hughes testified that Johnson, Kawan Palmer, and Chappell stayed in her apartment in Charlottesville for a period of time. She stated that she saw Johnson and Palmer handling cocaine in her apartment and that she heard Johnson, Palmer, and Chappell discuss traveling to New York to pick up crack to bring back to Charlottesville. She testified that she had been on such a trip to New York with Palmer and that they had met up with Johnson while they were there. The testimony of a codefendant, standing alone, can be sufficient to support a conviction. United States v. Burns, 990 F.2d 1426, 1439 (4th Cir. 1993).

Mills testified that she had seen Chappell and Kawan Palmer cutting cocaine in a motel room in Charlottesville for distribution. She testified that she sold cocaine for Palmer on at least 25 occasions, but she could have given the proceeds to either Palmer or Chappell because their cocaine was "united" and they were "always" together. She accompanied Palmer and Chappell to New York on two occasions to purchase cocaine and have it sent it back to Charlottesville through a woman on a bus. Another witness, Johnneen Young, testified that Chappell and Kawan Palmer had lived in her apartment for a couple of months, and that she had heard Chappell and Palmer discuss making trips to New York "to get some drugs, come back down here and sell it." She estimated that Chappell and Palmer traveled to New York every other weekend. Both Johnson and Chappell were arrested at the motel room registered to Palmer where police found 262.3 grams of crack below the room's open window.

11

The evidence is sufficient to show that Walker, Johnson, and Chappell conspired with others to possess and distribute cocaine.

The appellants also claim that the evidence was insufficient to support their convictions for individual charges of possession with the intent to distribute cocaine base. Johnson and Chappell challenge their convictions for possession of the 262.3 grams crack found outside their motel room. Before entering the motel room, a police officer heard a toilet flush and a window open. Teele testified that before the police entered he heard a toilet flush and saw Johnson come out of the bathroom. Crack was found outside the bathroom window. Police had observed the same window closed moments before the officer entered the room. The circumstantial evidence was sufficient to allow the jury to draw the inference that Johnson and Chappell were in constructive possession of the crack. See United States v. Nelson, 6 F.3d 1049, 1053 (4th Cir. 1993). The amount of crack found, 262.3 grams, was large enough to infer that it was intended for distribution and not for personal consumption. Id.

Chappell claims the evidence was insufficient to convict him of possession with the intent to distribute cocaine. Mills testified that on September 15, 1994, she went to a restaurant to sell cocaine for Palmer while Chappell sat in the car. A police officer also identified Chappell sitting in the car. The transaction was interrupted but was later completed at a K-Mart. After the sale, Mills and Chappell went into the K-Mart to shop. They then met Palmer in a movie theater where Mills gave Palmer the proceeds from the sale. Mills testified that Chappell was in the car because as far as drugs and money were concerned, "everything that Kawan owned, it was Duala's too."

Mills testified that she had sold drugs for Kawan Palmer at least 25 times and that Palmer and Chappell jointly owned the drugs. Chappell was present in the car at the restaurant and at the K-Mart where the sale was completed. He was with Mills immediately after the sale and was in the movie theater where the proceeds were turned over to Palmer.

Walker was convicted of possession with the intent to distribute cocaine base stemming from a November 10, 1994, incident at the bus terminal in Charlottesville. Gwen Palmer was arrested on Novem-

12

ber 10, 1994, immediately after getting off a bus. Police found a package on her containing crack cocaine. Palmer testified that Walker had given her the package of cocaine in New York to transport to Charlottesville by bus. Hughes testified that she and Walker were waiting at the bus station to pick up Palmer. Police spotted Walker waiting in the vehicle at the bus station. The evidence showed that the cocaine began in the possession of Walker, and Walker was present to retrieve it at the bus terminal before Gwen Palmer was arrested. The evidence was sufficient to show constructive possession.

VII

The appellants claim that the judge erred by failing to define "reasonable doubt" for the jury. The issue was not raised at trial, and there was no error in the instruction. This circuit has counseled courts not to define reasonable doubt because it often tends to confuse rather than assist the jurors. United States v. Reives , 15 F.3d 42, 45-46 (4th Cir. 1993).

VIII

Johnson claims that his sentence was improperly enhanced because the government did not prove that the cocaine attributable to him was in fact "crack" cocaine. He asserts that under the 1993 amendment to U.S.S.G. § 2D1.1 and recent appellate court decisions, the enhancement for "cocaine base" applies exclusively to "crack" cocaine, and that the government failed to prove that the cocaine in question was "crack." Johnson did not raise this issue at sentencing, so we review only for plain error. United States v. Grubb, 11 F.3d 426, 440 (4th Cir. 1993).

To support his position, Johnson cites cases from other circuits where there was insufficient evidence that the cocaine in question did not contain the chemical composition of crack as defined by U.S.S.G. § 2D1.1. United States v. Munoz-Realpe, 21 F.3d 375, 378 (11th Cir. 1994); United States v. James, 78 F.3d 851, 858 (3d Cir. 1996). In this case there was no dispute at any time during the proceedings that the cocaine in question was crack. The cocaine was referred to as "cocaine base, a/k/a crack" throughout the indictment and was identified as crack throughout the testimony of both lay and expert witnesses,

13

and during sentencing. Police detectives and codefendants repeatedly described the cocaine in manner consistent with the physical appearances of "crack." One detective referred to the cocaine as an "off white chalky substance" and another described cocaine as a "white rock-like substance." Johnson never objected to any of these descriptions of the cocaine as crack.

Unlike the evidence in both Munoz-Realpe and James, the evidence in this case is unambiguous--the record reveals no indication that the cocaine attributed to Johnson was any form of cocaine base other than crack. See United States v. Hall, 109 F.3d 1227, 1236 (7th Cir. 1997). We find no plain error in the district court's enhancement of Johnson's sentence for trafficking cocaine base.

IX

We have considered the remaining arguments submitted by Johnson in his supplemental pro se brief and have found no reversible error.

AFFIRMED